Twiss and another *against* BALDWIN and another.

Where the plaintiff in his declaration alleged, that he owned and possessed a manufactory and water-course leading thereto, by a race-way, on his land; that he had a right to use and enjoy the water in a convenient and customary manner, according to the natural and usual flow of the stream, without hindrance; and that the defendant, who was the owner of a mill above, on the same stream, deprived the plaintiff of the use of the water, by unreasonably penning it back, in the day-time, and causing it to flow down, in the night season, when the plaintiff could make no use of it; whereby the plaintiff lost the use of his manufactory, was hindered in his business, &c.; it was held, 1. that the plaintiff had shewn a right in himself, an injury by the defendant, and a loss resulting therefrom, and consequently, the declaration was sufficient; 2. that a prescriptive right was not set out, by these allegations, and consequently, proof of such a right was not necessary to sustain the action; 3. that the unreasonable detention of the water being the burden of complaint, proof of the allegations respecting the natural course of the stream and the right to enjoy it without hindrance, was not essential to a recovery.

A party having the right to the use of a water-course, according to his convenience and judgment, and all the right which prescription can confer, can exercise that right only in a reasonable manner; and therefore, if he use the water, not for his own benefit or convenience, but maliciously or wantonly, to the prejudice of another, he is responsible in damages.

This principle is not restricted, in its application, to injuries produced by encreasing the height of the dam.

If the plaintiff in such action allege, that the acts complained of were done *maliciously,* wantonly and without any possible benefit to the defendant, proof of malice is not indispensable; there being a perfect cause of action without that ingredient; and it being a well established principle, that the plaintiff in an action for a tort, need only prove enough of the facts alleged to shew that he has a good cause of action.

A party is answerable for the acts of his tenant, done by his (the landlord's) advice, consent or concurrence, in the same manner as for the acts of his servant.

THIS was an action on the case for an infringement of the plaintiffs' right to the use of water. The action was commenced on the 28th of *June,* 1830.

*New-Haven,*
July, 1832.

Twiss
*v.*
Baldwin.

The declaration contained two counts. In the first, the plaintiffs averred, that they owned and possessed a clock manufactory and a race-way and water-course, in *Meriden*, on a stream of water there flowing, called the *Harbour*, and running through a certain tract of land of the plaintiffs; that the plaintiffs had the right to use and enjoy the water in said stream, and that the same should flow, without interruption, over and through their said land, and in their said race-way, to their manufactory, in a convenient and customary manner, according to the natural and usual flow of said stream of water, and without the hindrance of the defendants, or any other persons; that the defendants, at the same time, owned and possessed a certain grist-mill and saw-mill on their land above the manufactory of the plaintiffs, on said stream of water, and a mill-dam and mill-pond connected with such grist-mill and saw-mill; that the defendants, well knowing all the rights and privileges of the plaintiffs, but intending to injure them therein, and deprive them of the use of said stream of water, and render their manufactory useless to them, wrongfully and maliciously, on the 1st of *July*, 1829, and on divers other days and times from that day to the date of the plaintiffs' writ, by means of said dam and pond connected with said mills, have deprived the plaintiffs of the use of said water, by unreasonably penning and shutting back the same, and have diverted the same from said stream and prevented it from flowing through said land of the plaintiffs to their manufactory, without any benefit to the defendants, and when they had no occasion to use said water at their mills; that the defendants have, also, with a view to injure the plaintiffs' manufactory and deprive the plaintiffs of the use of said water, wantonly and maliciously let out and caused to flow down, in the night season, and at other times, large quantities of the water of said stream, which they had previously detained as aforesaid, when the plaintiffs could not use the same at their manufactory, and when the defendants had no use for the same at their grist-mill and saw-mill; and that, by means of the premises, the plaintiffs have lost the use of their manufactory, and been greatly hindered and injured in their business, &c.

The second count alleged, that the plaintiffs, on the 28th of *June*, 1830, owned and possessed a tract of land in *Meriden*, in and through which a certain stream of water, called the *Harbour*, was accustomed to flow, and of right ought to have

flowed, at all times, without hindrance or interruption, in the usual and accustomed manner, and so that the same might be used and enjoyed by the plaintiffs, for all useful and valuable purposes to which a flowing stream of water could be applied; yet that the defendants, well knowing all the rights and privileges of the plaintiffs as aforesaid, but intending to injure the plaintiffs therein, and to deprive them of the use, benefit and advantage of said stream, on divers days and times, from the 1st of *July*, 1829, to the date of the writ, maliciously and wrongfully stopped, prevented and hindered the water of said stream from flowing in and through the plaintiffs' land, and in said stream, as it ought to have done, and otherwise would have done; and that the defendants, during all said time, maliciously and wrongfully stopped, penned and kept back said stream of water from the plaintiffs' land, by means of a mill-dam, which the defendants, during all said time, maintained upon said stream on their land, above the plaintiffs' land, and thereby deprived the plaintiffs of the use of said stream, for several days in succession, at sundry times during the period aforesaid; that the defendants, also, maliciously and wrongfully permitted and caused the water of said stream, after it had been so kept back and detained, by the defendants, to run and flow down, in great quantities, in the night season, from the land of the defendants in and through the land of the plaintiffs, at which times the plaintiffs were wholly unable to make any use of said stream of water, as they had right to do; and the same was wholly useless and lost to the plaintiffs, and the value of their land, and of the buildings and machinery thereon, was greatly lessened, by the wrong doings of the defendants.

The cause was tried at *New-Haven, August* term, 1831, before *Williams*, J.

The defendants were owners in fee, as tenants in common, of an ancient mill seat and dam, with a grist-mil and saw-mill connected therewith, which were supplied by the pond raised by such dam. In *September*, 1828, the defendant, *Asahel Baldwin*, conveyed to the plaintiffs a lot of land lower down the stream, not connected with said mill-seat; and being the owner of another piece of land between the lot so conveyed and said mill-seat, granted, by the same deed, liberty to the defendants to erect thereon a dam across the stream and to cut a race-way through the last mentioned lot to the land of

*Nathaniel Andrews,* for the purpose of conducting the water to the plaintiffs' land, for the use of the clock manufactory or other works to be erected thereon; the plaintiffs having obtained of *Andrews* the right to continue such race-way across his land. In the month of *October* following, the plaintiffs made the contemplated race-way and built a clock manufactory on their land, with machinery to be moved by the water passing through such race-way, and without any other connexion with the natural stream.

The defendants, and those under whom they claimed, had never been in any way restrained or limited in the use of their mills and dam, but had always used them, as the quantity of water would allow, and as their own convenience required. The stream is a perennial one, and is generally abundant; but in dry seasons, it was necessary for the defendants, at times, to suspend grinding, in order to augment the quantity of water in the mill pond. Sometimes, it required several days for the pond to fill sufficiently to grind at all; and at other times, the pond would fill enough to enable them to grind, at shorter intervals.

The defendants claimed to have proved, that it had always been usual and convenient for the owners of the grist-mill to grind in the morning, with the water which had accumulated during the night, and to grind in the evening, with the water which had accumulated during the day; and that in dry seasons, when the water was suitable for such use, if the dam was full, it would be exhausted in two or three hours. They also claimed to have proved, that one *James Baldwin,* in *August* 1827, became, and had ever since continued to be, their tenant of the grist-mill, under an agreement that he should have the whole use and possession thereof, and should sell the proceeds and pay them one half of the avails. They further claimed to have proved, that the water of the stream had never been kept back, by their dam, or let out therefrom, except when used for grinding, or for the purpose of necessary repairs.

It was admitted, that when the plaintiffs purchased, in 1828, the flume of the defendants' grist-mill was old and leaky, having been in use about fourteen years; and that it let out, by leakage, when the gates were shut, a quantity of water nearly or quite sufficient to carry the machinery of the plaintiffs; and that in *July* 1829, this flume was caulked, by the defendants, so as to retain all the water in a dry season, in consequence

of which the quantity of water running to the plaintiffs' clock manufactory, when the defendants' gates were shut, was greatly diminished. It was admitted, that the plaintiffs' usage at their manufactory, was, to discontinue business for the day about an hour before sun-set, during the summer months; and that they had no pond to retain the water, which flowed from the defendants' mill, after that time, in the afternoon or evening.

The plaintiffs offered testimony to prove, that the defendants, in the summer of 1829 and of 1830, before the commencement of this suit, used to grind at their grist-mill, in the evening, after the plaintiffs had done working at their manufactory. The defendants admitted this; and claimed to have proved, that they also used their mill in the morning.

The plaintiffs claimed to have proved, that the defendants had declared their intention so to use their mills as to injure and embarrass the plaintiffs in the use of their manufactory; and that they had so used them, when it was in no way beneficial to themselves. This was denied by the defendants.

Upon the facts thus admitted or claimed to be proved, several questions of law were made, by the counsel, and submitted for the decision of the court.

The plaintiffs insisted, first, that the deed, by virtue of which they derived their title, being given by *Asahel Baldwin*, one of the owners of the mills, the plaintiffs acquired thereby a right to the use of the water, as against such owners, to a greater extent than if the deed had been given by a stranger. Secondly, that the plaintiffs were entitled to the water as it would flow from the dam and flume of the defendants at the time when the deed was given; and that the defendants had no right, by caulking the flume or otherwise tightening the dam, to diminish the amount of leakage then existing, for how short a time soever such leakage might have existed before the giving of the deed. Thirdly, that it was the duty of the defendants to grind at their mill, during the day time, and while the plaintiffs were using their clock manufactory; or at least, that if the defendants could grind as conveniently and usefully in the time when the plaintiffs customarily worked at their manufactory as afterwards or in the evening, it was their duty so to do; and to do otherwise was a violation of the plaintiffs' rights.

The defendants resisted these several claims, contending, in

relation to each, that the reverse was true. They also insisted, first, that the right of the plaintiffs to the stream and the use of the water, as alleged both in the first and second counts, was not supported by the evidence, but was disproved, by the facts admitted. Secondly, that the defendants had a right to retain the water in their pond, whenever and as long as they chose, and for such purposes as they chose, and were not bound to let it off for the accommodation of those below ; at any rate, that the plaintiffs could not recover against the defendants for retaining the water, at one time, and letting it out, at another, unless they proved that such retention or letting out was useless to the defendants, as well as injurious to the plaintiffs. Thirdly, that if the jury should find the tenancy of *James Baldwin*, as claimed by the defendants, no recovery could be had against them, for any acts whatever, they not being responsible for any act of their tenant : nor were they responsible for any act of his, even if he were their servant only, and not their tenant, if done without their advice, consent or concurrence.

The judge charged the jury to the following effect : That if the plaintiffs had established their right to the free use of the water for their machinery, there was no such variance between their title as stated and proved as should prevent a recovery ; particularly, on the second count : That the defendants, having an ancient mill, which they and those under whom they claimed, had occupied from time immemorial, had a right to continue to occupy the same, in the accustomed manner : That this water being originally common, the use of it by individuals, must be regulated and guarded with a view to the individual rights of all who have an interest in its enjoyment and to the great objects of society : That it is a maxim of law, as well as of morals, that the occupant must use his own in such a manner as not to injure his neighbour : That although the defendants had a right to use the water, they must use it in such a manner as not needlessly, wantonly or maliciously to injure the occupants of the stream below ; and if under colour of right, without any useful purpose to themselves, they did thus interrupt the plaintiffs in their use of the water, they were responsible therefor : That as the claim was against the defendants jointly, the acts charged must be done by them jointly ; one of them not being responsible for the acts of the other : That if the defendants did the acts in question, by

means of a third person, they were as much responsible as if they had done them themselves : That if the mills were leased, by the defendants, and the tenant was in possession independent of them, this would end the case ; but if the tenant acted by their advice, consent or concurrence, they were responsible for his acts.

The jury returned a verdict for the plaintiffs ; and the defendants moved for a new trial, for a misdirection.    They also moved in arrest of judgment for the insufficiency of the declaration.

*Sherman* and *R. S. Baldwin*, in support of the motions, contended, 1. That the declaration was insufficient.    The defendants being sued for acts done or omitted on their own land, not of themselves unlawful or required, could not, of course, be subjected to damages, unless by reason of such acts or omissions, some *rights* of the plaintiffs were violated.    The maxim *sic utere tuo ut alienum non lædas*, applies only to cases in which the acts complained of violate the *rights* of the injured party.    *Thurston* v. *Hancock* & al. 12 *Mass. Rep.* 220.  Now, the plaintiffs have not, in either count of the declaration, set forth their rights and alleged a violation of them, with the particularity and precision which the law requires.

The second count is insufficient, first ; because the acts are charged to have been done prior to the plaintiffs having any interest in the premises. 2 *Saund.* 171. *b. c. n.*    Secondly, because no special damages are alleged.    Damages are not implied from the mere interruption of water, though wrongfully ; and it is not stated, that the plaintiffs had any machinery to be moved by water.    Thirdly, unless this count asserts a right in the plaintiffs greater than they proved, it does not charge the defendants with any *acts*, which, as upper proprietors, were not lawful.  See *Ingraham* v. *Hutchinson*, 2 *Conn. Rep.* 584.    They are simply charged with detaining and letting out the water, by means of a mill-dam, &c. at times when the plaintiffs could not use it.

2. That upon the facts proved and admitted, the rights of the plaintiffs were fatally *variant* from those described in their declaration.    The plaintiffs, in both counts of the declaration, claim an *easement* in the land of the defendants, *viz.* to have the water of their stream flow through their land to the land and in the race-way of the plaintiffs, without hindrance or in-

terruption, averring that it has been *accustomed to flow* in this manner. *Solebat currere* means a prescription. *Hebblethwaite* v. *Palmes,* 3 *Mod.* 48. *Angell on Watercourses,* append. 86. 1 *Campb.* 315, 6. n. *Amer. Prec. Dec.* 246. n. We have, then, a declaration setting forth a right *by prescription.* The right proved is a right *by grant* within two years from the date of the writ. There is also a variance as to the *amount* of the right. The plaintiffs assert in this declaration a right *superior* to a common right ; (*Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 584.) whereas the facts admitted and proved, shew, that they have *less.* The reason of the rule requiring the right, in its nature and amount, to be proved as stated, is not technical. When you allege a greater right and prove a less, the indentity is gone, and you cannot recover.

3. That the judge improperly *omitted* to charge the jury upon the *contestatio litis.* The defendants claimed, that the erection of the plaintiffs' manufactory where none stood before, conferred on them no additional rights to those before incident to their land ; and that they acquired no greater rights, by reason of *Asahel Baldwin's* deed, than if he had been a stranger to the upper mills. But the judge omitted to charge the jury on these points, and submitted to them the question, whether the plaintiffs had established their right to the *free use* of the water for their machinery, &c.

4. That the charge was *erroneous.* Instead of making inutility to the defendants in their use of the water and inconvenience to the plaintiffs, grounds of recovery, the judge should have charged the jury, that the rights of the defendants, as owners of an ancient mill-seat, were measured by the *height of their dam ;* that they had, at the time of the erection of the plaintiffs' manufactory and of the doing of the acts complained of, the right of retaining, as long as they chose and for such purposes as they chose, the water of the pond, by a dam of that height ; and that the plaintiffs had *no easement* to have their convenience (which might be opposed to the interests of those still lower down the stream) consulted in the use of the dam. *Alder* v. *Savill* & al 5 *Taun.* 454. 461. If the height of the dam were not the measure of the privilege pertaining to ancient mill-seats, there would be opened a source of perpetual litigation on questions relating to the utility or reasonableness of different modes of using the water, by which the rights of every mill-owner in the state would be set afloat, and made

to depend on the uncertain verdict of a jury, procured, perhaps, by the biased testimony of owners on the stream below and their dependants. The height of the dam and level of the pond, in the ordinary state of the stream, furnish the only certain rule ; and is the one universally adopted in practice. The water must eventually come ; and if, in dry times, the plaintiffs sustain inconvenience, it is because they have built their mill where they have no privilege of a pond. That circumstance gives them no claim to participate, without consideration, in the advantages of the defendants' reservoir.

5. That as this action is framed, it being for a *malfeasance,* charging the acts to have been done *maliciously,* not negligently, the malice was essential to be proved. But the judge did not so charge the jury.

6. That if *James Baldwin* was the *tenant* of the defendants, and did the acts complained of " *needlessly,*" &c. under such circumstances as to be *actionable ;* still the acts being apparently lawful, the defendants are not liable therefor, though they may have been done with their consent, &c. unless they knew the circumstances which rendered them wrongful.

*N. Smith* and *Hitchcock,* contra, contended, 1. That the declaration was sufficient. The plaintiffs, in both counts, have set out a right to the use and benefit of the stream, and state that the defendants have wrongfully and maliciously deprived them of it. The jury have found these allegations proved ; and have given the plaintiffs damages. This entitles them to judgment. *Shears* & al. v. *Wood,* 7 *J. B. Moore,* 345. (17 *Serg. & Lowb.* 76.) The law does not infer or imply any adverse right of the defendants, limiting the plaintiffs in their right ; nor impose upon the plaintiffs the burden of stating the defendants' adverse rights, and of averring that they have exceeded their powers or abused them. After verdict, especially, it must be intended, that the defendants were wholly wrong-doers in stopping the water, and sending it down in large quantities.

The objection that no special damage is alleged, is unfounded. The plaintiffs have alleged special damages, *viz.* loss of the use of the stream, diminution of the value of their land and buildings and machinery, hindrance in their business, &c. See *Williams* v. *Morland,* 2 *Barn. & Cres.* 910. (9 *Serg. & Lowb.* 269.) Another objection is equally unfounded. The plaint-

*New-Haven,*
*July, 1832.*

Twiss
*v.*
Baldwin.

iffs were at liberty to prove an ownership on any day from the 1st of *July* 1829 to the 29th of *June* 1830; and after verdict, it will be presumed that they have done so.

But if the evidence was properly admitted on the first count, the plaintiffs were entitled to judgment, even if the second count is insufficient.

2. That there was no variance between the declaration and the evidence adduced in support of it.

In the first place, the declaration is founded on the plaintiffs' possession and ownership of the land; and sets out no prescriptive right; nor do they claim by virtue of any such right. They claim the common and natural right incident to the ownership of land through which a stream passes, that the water should flow in the natural and usual manner. *Angell on Watercourses,* 1. 5. 33, 4, 5. *Bealey* v. *Shaw* & al. 6 *East* 208. *Williams* v. *Morland,* 2 *Barn. & Cres.* 910. *Ingraham* v. *Hutchinson,* 2 *Conn. Rep.* 590. And this mode of declaring is proper. 1 *Wms. Saund.* 346. n. 2. 2 *Chitt. Plead.* 769. 799. 6 *East* 208. 2 *Barn. & Cres.* 910. *Merritt* & al. v. *Brinkerhoff* & al. 17 *Johns. Rep.* 306.

But secondly, the title set out in the declaration, if special, is still supported by the evidence. It is, that the plaintiffs have the right that the water should flow, without interruption, in a convenient and customary manner—and in the natural and usual course, without hindrance or interruption in that natural and usual flow.

Thirdly, in actions of tort, the plaintiff recovers on proof of a cause of action, though he fails to prove his whole statement. *Ricketts* v. *Salwey,* 2 *Barn. & Ald.* 360.

Fourthly, the charge gives the defendants the full benefit of any ancient or customary right, which they might prove to the jury.

Fifthly, the charge also maintains the doctrine that the defendants must use their rights, whether ancient or modern, in such a manner as not needlessly and maliciously to injure the plaintiffs without benefit to themselves. In short, it only denies the sovereign right of the defendants to do whatever they please, without regard to the plaintiffs' right. See *Merritt* & al. v. *Brinkerhoff,* 7 *Johns. Rep.* 306. *Bealey* v. *Shaw* & al. 6 *East* 208.

Lastly, the court, by not particularly noticing the plaintiffs' first and second points, has either not recognized them, or by

*New. Haven,*
July, 1832.

Twiss
*v.*
Baldwin.

the other parts of the charge, has denied them; and in either case, the defendants are not injured.

WILLIAMS, J.  The defendants claim a new trial, because the declaration contains no allegations sufficient to support the verdict; and that the proof does not support those allegations. They also claim, that the charge was incorrect, in omitting to express opinions to the jury on some points, and in expressing incorrect opinions on others.

Is the declaration sufficient?  The first count shews, that the plaintiffs had, and of right ought to have, certain buildings and a manufactory and a water-course leading thereto, by a race-way; and that the defendants wrongfully and maliciously prevented the water from running to them, by unreasonably penning back the water, and causing it to flow down in the night, and at such times as the plaintiffs could make no use of it; whereby they lost the use of their manufactory, were hindered in their business and deprived of the gain they might have made.

The plaIntiffs have shewn a right in themselves, an injury by the defendants, and a loss sustained by them in consequence. These allegations would have been sufficient, had there been a demurrer: of course, this declaration can be sustained after verdict.  Indeed, the principal objections were to the second count; and that is unimportant, if the opinion about to be expressed on the next objection, is correct.

Is there such a variance between the proof exhibited and the allegations, that the plaintiffs cannot recover?  It is said, that the plaintiffs have set forth a prescriptive right; and must, therefore, prove it.

The claim in the declaration is, that on the 28th of *June,* 1830, and ever since the plaintiffs had a clock manufactory on a stream called the *Harbour,* and that they had *right* to use and employ the water of said stream, and that the same should flow, without interruption, over and through their land and in their race-way to their manufactory, in a convenient and customary manner, according to the natural and usual flow of said stream, and without the hindrance of the defendants or any other persons.

This, it is said, is a presumptive right, which must be precisely proved.  The claim is to the enjoyment of the water *in a convenient and customary manner;* but whether that

is to be proved, by occupancy, or grant or prescription, does not, and need not, appear. That the right is set out as prescriptive rights formerly were, (*Luttrel's* case, 4 *Co.* 84.) or as they now are in a plea, (*Am. Prec. Dec.* 200.) will not be claimed. But, it is said, that the words *currere solebat et consuevit*, are considered as equivalent to setting out a title by prescription. *Surry* v. *Piggot, Poph.* 171. *Hebblethwaite* v. *Palmes*, 3 *Mod.* 52. *Tenant* v. *Godwin*, 2 *Ld. Raym.* 1094. It is true, that in support of a verdict, where these words were found in a declaration, the court would presume that a prescriptive right was proved under them; but it does not follow, that they would have been so considered, had the objection been made under a demurrer. Indeed, Lord *Holt*, whose opinion has been relied upon, in *Rosewell* v. *Prior*, 1 *Ld. Raym.* 392. S. C. 2 *Salk.* 459. held, in a prescription for ancient lights, that the words *consuevit et debuit* would not be sufficient upon a demurrer. As it is now settled, that bare possession is sufficient to support an action of this kind, (*Anon. Cro. Car.* 499.) there is no necessity to set out a prescriptive right; much less is it necessary to presume, that it was intended by these words to set out such a right, for the purpose of defeating the plaintiff, by supposing a variance to exist between the allegations and the proofs.

This declaration is much like the form now used in *England*, founded on possession, where it is intended to avoid the preciseness required in setting out a prescriptive right. *Williams* v. *Moreland*, 2 *Barn. & Cres.* 910. (9 *Serg. & Lowb.* 269.) *Sheers* v. *Wood*, 7 *J. B. Moore*, 345. (17 *Serg. & Lowb.* 76.) *Liggins* v. *Inge* & al. 7 *Bing.* 682. (20 *Serg. & Lowb.* 287.) I think, therefore, the plaintiffs were not bound to prove a prescriptive right.

It is said, however, that as the plaintiffs have set out a right to the use of the water, according to its *natural* course, and *without interruption*, this is descriptive of their right and must be proved. It is true, that no allegation descriptive of the identity of that which is legally essential to the claim or charge, can ever be rejected; as it would tend to mislead the party. Thus in trespass, where an abuttal is misdescribed, it is fatal; for there the action is local. *Drewry* v. *Twiss*, 4 *Term Rep.* 559. So, if a person is charged with stealing a white horse, proof that he stole a black one would not support the information. In this case, however, this does not seem to be intended as a

description of the plaintiffs' right, any more than in *Ricketts* v. *Salwey*, 2 *Barn. & Ald.* 360. where the plaintiff declared, that he was possessed of a certain messuage, and divers, *viz.* 150 acres of land, with the appurtenances, in the parish of *A.B.*, and by reason thereof, he ought to have, and still of right ought to have, common of pasture in and upon said messuage and land in and upon a certain waste, called the *Wheat Common*, &c. At the trial, it appeared, that the right was claimed in respect of *Ashford Hall* and the land usually held with it; on which issue the plaintiff failed. It also appeared, that he was possessed of land within the parish in respect of which he was entitled to a right of common, on which there was no messuage; and it was held, that if the plaintiff proved part only, he was entitled to recover. *Best*, J. said: " That in cases of contract and prescription, the allegation must be proved as laid; but that rule is not applicable to cases of tort, where the right is merely inducement to the action. In this case, the plaintiff is entitled to judgment, if he has a right of common, and that right has been disturbed, by the defendant. Now, he has stated a right in his declaration, and has proved the same right in part, by his evidence; and I think that is sufficient to entitle him to damages *pro tanto*." (*p.* 367.) *Holroyd*, J. said: " It is quite enough, in cases of tort, if you prove the same ground of action laid in the declaration, although not to the extent there stated; and in such cases, the court will give judgment as if the declaration had been originally confined to the action proved. In cases of contract and prescription, it is different; for in the former, if all that is stated in the declaration be not proved, it is proof of a different contract and a different ground of action. In the latter case, where a prescription is alleged in bar, it is one entire thing, and must be proved as laid. In the present case, the declaration does not allege any prescription, but states, that the plaintiff was possessed of land and a messuage, and that he ought in respect of them to have a right of common. Now, the proof given is not of a different allegation, but of the same allegation in part; and that is sufficient." (*p.* 366.) The reasoning in that case seems to me to be applicable to this. The plaintiffs have not proved all that they have alleged; they do not prove their right to the extent they have stated it; but they prove a right, and that they have been disturbed in the enjoyment of it. The proof, then, is not of a different allegation, but of the same al-

legation in part.    That proof of part of the essential allegations in an action founded on tort, is sufficient to support the action, is certainly true. 1 *Chitt. Plead.* 373. *Ca. temp. Hardw.* 121. And he need not even prove the same title.    *Bul. N. P.* 76. And although in trespass he declares that he is seised and possessed, proof of possession is sufficient.

Here the plaintiffs declare on a right to the use of this water without interruption ; yet they also state, that the defendants have a dam *above*, which, of course, must form some interruption.    Of this, however, they do not complain, but that they have unreasonably penned and stopped the water. The unreasonable detention, then, is the burden of complaint ; and if the allegation respecting the *natural* course of the stream, or the right to enjoy it without hindrance or interruption, were stricken out, it would not affect the plaintiffs' right to recover.    Looking, then, at the nature of the action, and the technical character of the objection, the objection must be overruled, and there is no variance, which ought to affect the claim of the plaintiffs in the first count of this declaration.

The next objections to be considered, are those made to the charge.    These were of two classes—on account of omissions and misdirections.

As to the former, the plaintiffs claimed, that by the deed of *Asahel Baldwin*, one of the defendants, they acquired greater privileges in this stream than if the deed had been from a stranger.    They also claimed, that the defendants had no right, either by caulking or tightening their dam, to diminish the leakage in it, how short time soever such leakage might have existed ; and also, that the defendants should grind only at such hours as would accommodate the plaintiffs.    It is true, that the court did not consider or discuss these claims severally ; but they were all disposed of in the general instructions given to the jury, that the defendants, having an ancient mill, had a right to use the stream in the usual and accustomed manner.    This clearly implied, that they had all the right that immemorial usage could confer, and, of course, disposed of all these claims, (some of which were rather suggested than urged) in a manner of which the *defendants* cannot complain ; for the defendants had not claimed, and could not claim, any greater rights than immemorial usage could confer.    The defendants did indeed claim, that their right, thus acquired, was a right to do with the water what they pleased, to retain it as

long as they should choose, and to let it off when and how <span style="float:right">*New-Haven,*<br>July, 1832.</span> they pleased; in short, that they could be restrained by no rule but their own pleasure. The court proceeded upon the <span style="float:right">Twiss<br>*v.*<br>Baldwin.</span> ground that the defendants had all the right which prescription could confer;—perhaps all the right which could, in any way, be transferred to an individual to the use of a running stream.

Still a question arises, what is the extent of this right? The defendants claim not only a right to use it themselves, but to deprive others of the use of it; not only to enjoy it, but to ex-clude the participation of others. Now, this right to water be-ing a common right, the individual who claims to appropriate it to his own use, must shew a right superior to others.

These defendants claim a right by immemorial usage, or a prescriptive right. But prescriptions are founded on grants, which are supposed to be lost; and nothing can be prescribed for but what may pass by grant. 1 *Vent.* 387.

What, then, may we presume was the grant of this water to the defendants? They do not claim, that they had right to stop the water entirely, but to use it as they pleased. Sup-pose they had pleaded they had a right to stop the water, not for the use of their mill, but to prevent the use of it for their neighbour's mill; would such a grant have been presumed? The defendants only proved, that they had a right to use the water for their mill according to their convenience and judg-ment. This certainly does not prove, that they had a right to use it according as caprice or malice may dictate, without re-gard to the rights of others. A right to use merely, cannot confer a right unreasonably and unnecessarily to prejudice the rights of others.

It is said, by one whose word has been pronounced to be law, that an action on the case does not lie for the *reasona-ble use* of my right, though it be to the annoyance of another; (*Com. Dig. tit.* Action upon case for a Nuisance, C.) clearly implying, that such an action will lie for an *unreasonable* use of one's right. Thus, if one carry an unreasonable weight, with an unusual number of horses, on a highway, it is a nui-sance. *Com. Dig. tit. Chimin.* A. 3. So if the house of two tenants in common or joint-tenants be ruinous, a writ *de repar-atione facienda* lies against him, that will not repair. *Fitzh. N. B.* 127. *Co. Litt.* 200. So if the house of *A.* be near the house of *B.*, and *A.* suffer his house to be so ruinous that it is

like to fall upon *B.'s* house, *B.* may have a writ de *domo repar* *anda ;* or, on special damage, an action on the case.    *Co. Litt.* 56. *a.* and n. 375. by *Harg.*   So an action lies against him, who corrupts the air, by noxious trades.    *Hutt.* 136.    9 *Co.* 59.    *Cro. Car.* 510.    2 *Ld. Raym.* 1292.

These defendants can claim no better right to use this water than the wagoner to use the public highway ; or than the butcher or tallow chandler to exercise his trade ; or the owner of a ruinous house, to suffer it to decay : and if in those cases the salutary maxim *sic utere tuo ut alienum non lœdas,* applies, I see no good reason why it should not apply to the case before us.

The defendants were not deprived of the exercise of a right to use this stream, in such a manner as convenience, or an honest judgment would dictate ; nor did the principles adopted by the court below, tend to deprive them of any use beneficial to themselves ; but they did tend to prevent them, under colour of right, from injuring others.

The right to the use of water, as well as of air, being a common right, must be exercised in a reasonable manner.   "The elements being for general and public use," says *Thompson,* Ch. J., "and the benefit of them appropriated to individuals, by occupancy only, this occupancy must be regulated and guarded with a view to the individual rights of all, who have an interest in their enjoyment."   *Platt* v. *Johnson* & al. 15 *Johns. Rep.* 213. 218.   The objections, therefore, to the charge, on this ground, cannot be sustained.

The defendants also claimed, that as they have not raised their dam, no action will lie ; and that the injury cannot be ascertained in any other way ; for any other mode will be so uncertain as to encourage litigation ; in support of which they cited a *dictum* of *Heath,* J., in *Alder* v. *Savill,* 5 *Taun.* 461., that keeping the water penned up for a longer time than usual, would not entitle the plaintiff to recover, if it were not penned up higher than usual.   In that case, the mill-owner, by tightening his gates, and applying the water to the use of his mill, in the best manner, did not draw it off from the plaintiff's land, so soon as it was drawn off, when the mill was much out of repair.   So far from doing the act to injure his neighbour, the defendant was attempting to apply the water, in the best manner, to the use of his own mill ; and the remarks of the

judge might be very proper upon that state of facts, but were not intended as a general rule, that no action would lie for an injury done by water, except in consequence of raising a dam. To make *that* the only test of damage, would be to adopt a principle wholly inadequate to do justice, except in a single case ; and this, to discourage litigation. Litigation, as such, is certainly not to be encouraged ; but yet it will hardly do to adopt a rule, which will leave many injuries without redress, through fear of litigation. There is an evil worse even than *that :* it is the want of protection by law, and the consequent evil of *self-redress.*

As to the uncertainty of determining the nature of the injury, except in this way, those who have often attended such trials, will testify, that it is often as difficult to ascertain whether a dam has actually been raised, as to ascertain the motive which leads to it. In the case of *Stiles* v. *Hooker,* 7 *Cowen* 266. 268. the court say, that it is not the height of the dam, but the height of the water, which does the injury. Of course, it is not the height of the dam, which is the ground of action.

It was also objected, that the declaration alleges, that the act was done maliciously ; and unless malice was proved, the plaintiffs could not recover ; but the jury were instructed, that if the act was done wantonly, or needlessly, or maliciously, the plaintiffs might recover.

To determine the propriety of this charge, we must revert to the declaration. It alleges, that the defendants, minding and intending to injure the plaintiffs, and deprive them of the use of said stream of water, and to render their manufactory useless, wrongfully, maliciously, and injuriously, have deprived the plaintiffs of the use of said water, by unreasonably penning and shutting back the same. The plaintiffs state their right ; and the injury done by the defendants' act, by unreasonably depriving them of the use of the water, that is, by penning and shutting it back, without any beneficial purpose to themselves. The gist of the action is the unreasonable or wrongful conduct in diverting and obstructing the water, to the injury of the plaintiffs. Whether this act was done wantonly or maliciously, or without any possible benefit to themselves, it was evidence of an unreasonable use of the water, and an unreasonable, or wrongful exercise of their privilege ; and the injured had a right of satisfaction.

New-Haven,
July, 1832.

Twiss
v.
Baldwin.

The allegation that it was done maliciously, seems to me to be wholly unnecessary, and, if stricken out, would not affect the right of action.   And upon well established principles before alluded to, the plaintiff in an action for a tort, need only prove enough of the facts alleged, to shew that he has a good cause of action.   Thus, in an action on the warranty on the sale of a horse as sound when he was unsound, and the defendant *knew* that fact ; the *scienter* need not be proved, and may be stricken out.   *Williamson* v. *Allison*, 2 *East*, 446. There the knowledge, and here the malice, may tend to aggravate damages ; but there is a perfect cause of action without those allegations.   And though it may be adviseable, in aggravation of damages, to state a malicious intent ; yet, if it be unnecessarily stated, it need not be proved.   1 *Chitt. Plead.* 377.

It is said, that in *Panton* v. *Holland*, 17 *Johns. Rep.* 92. 98. a different doctrine was advanced.   There, an action was brought by the plaintiff against an adjoining proprietor, for digging so near the foundation of his house as to undermine it ; alleging, that he did this maliciously, intending to injure the plaintiff.   The defendant claimed, that it was a case of malfeasance, not of nonfeasance ; and that no evidence of negligence or unskilfulness could be admitted.   The judge who delivered the opinion of the court, said, that " if the act was stated to be done maliciously, it would have been a case of malfeasance, an injury distinct in its nature from a case where damages are claimed, on the ground of negligence or unskilfulness, or that the act complained of does of itself subject the party to damages, though done with the greatest care."

In the case before the court, the damages are not claimed for negligence or unskilfulness, but for an unreasonable exercise of an act lawful in itself ; and that act is the same in its effect upon the plaintiffs, and as entirely useless to the defendants, whether it was wanton, malicious, or merely needless. The act, then, being the same, and the effect the same, and there being no reasonable excuse, the cause of action must be the same in one case as in the other, though more or less aggravated, or extenuated, according to the degree of malice proved to have existed.   And while I admit, that no man is answerable in damages for a reasonable exercise of a right, where it is accompanied by a cautious regard for the rights of others, where

there is no just ground for the charge of negligence or un-skilfulness, and where the act is not done maliciously, I am warranted, by the opinion of the same judge who delivered the opinion in the case above cited, in saying, that for an unreasonable exercise of his right, unaccompanied by a cautious regard for the rights of others, a party is answerable. If then, the defendants did the acts charged wantonly, maliciously, and without any useful purpose to themselves, it was an unreasonable exercise of their rights.

As to the objection that these defendants were not answerable for the acts of their tenants, if such tenants acted by their advice, consent or concurrence,—I know no principle of law under which they can shield themselves, any more than if the tenants were merely servants.

I do not, therefore, advise a new trial.

The other Judges were of the same opinion.

New trial not to be granted.