*Gardiner, J.
 

 There is some difficulty in ascertaining the precise position occupied by the supreme court of the United States upon the subject of state insolvent laws. We are authorized, I think, to assume, that such laws, when enacted in good faith, are valid, so far as they affect the remedy to enforce the contract.
 
 (Sturges
 
 v.
 
 Crowningshield,
 
 4 Wheat. 122;
 
 McMillan
 
 v.
 
 McNiel;
 
 4 Id. 209;
 
 Ogden
 
 v.
 
 Saunders,
 
 12 Id. 213;
 
 Cook
 
 v.
 
 Moffatt,
 
 5 How. 295.) That they were void, as impairing the obli- * 504 1 £a^on 03^ contrac*s! *whenever they assume to -* discharge the obligation of the debtor, was affirmed by Chief Justice Marshall, in the case from 4 Wheaton, above cited, without qualification. In
 
 Saunders
 
 v.
 
 Ogden,
 
 the decision was against the validity of the law relied upon by the defendant, in that particular case; but the opinion of the majority of the judges, then delivered, confined the principle settled, to contracts made by citizens of different states, and, in argument, affirmed the constitutionality of state laws absolving the debtor from contracts made subsequently to the passage, between citizens of the same state.
 

 In the case before us, the defendant purchased merchandise in the city of New York, for which he gave his note to the plaintiff, the vendor, payable in South Carolina, where the vendee then and subsequently resided. The debt, consequently, was contracted at the place of residence of the creditor, by a citizen of another state, to be paid at the domicil of the debtor. The case is, therefore, within the general doctrine established in
 
 Ogden
 
 v.
 
 Saunders.
 
 The purport of that adjudication, as stated by
 
 *504
 
 Judge Johnson, was,
 
 “
 
 that as between citizens of the same state, a discharge of a bankrupt by the laws of that state is valid, as it affects posterior contracts; as against citizens of other states, it is invalid, as
 
 to all contracts’1
 
 According to this authority, the insolvent law invoked by the defendant was void as against the plaintiff, a foreign creditor.
 

 Again, independent of authority, the law of the place of the contract, as well as of its performance, bound this defendant to the fulfilment of his promise; another law of South Carolina, in reference to a distinct subject, assumed to discharge him from this obligation, without performance. If annulling a contract impairs its obligation, such a law would conflict with the constitution of the United States.
 

 It has been said, in reference to contracts between citizens of the same states, that bankrupt laws in force at the time of the agreement, became a part of the contract ■ — and that the same rule, should apply to laws at the place of performance, in cases like the present. This argument has never been deemed satisfactory. *For, if existing insolvent laws constitute an element of the agreement, why should not the *-
 
 °
 
 right to enact them, in the discretion of the legislature, especially, when given by a written constitution, be recognised in the same manner. There is no more difficulty in finding a place for such an acknowledgment, or, indeed, for a state constitution, in the undertaking of a debtor, than for a state bankrupt law. In either case, upon the hypothesis under consideration, the creditor is bound in virtue of his own assent. He may, therefore, as well be concluded by a recognition of a right to legislate prospectively upon this subject, as by a recognition of a law in force at the time of the contract. Every insolvent law, consequently, enacted in pursuance of such a constitution, in the ordinary course of legislation, would be valid, whether passed previous or subse
 
 *505
 
 quent to the creation of the debt. The United States court, however, have uniformly held otherwise, as to all laws discharging the debtor, passed subsequent to the contract. (6 Peters 348; 12 Wheaton 213.)
 

 Again, if the insolvent law of South Carolina constituted a part of the undertaking of the defendant, so, for the same reason, did the constitution of the United States. The substance of the contract between the parties would then be, that the maker should pay the money specified in the note, unless discharged by some law of the place, by performance, not in conflict with the supreme law of the land. This would lead us, through a circle, back to the- question, whether annulling the contract, without satisfaction and against the will of the creditor, impaired its obligation.
 

 The notion, however, that insolvent laws constitute a part of the agreement of parties, under any circumstances, has been considered as fallacious by judges of the court in which the doctrine was first broached. (5 Howard 311.) The permission by these laws accorded to a debtor to absolve himself, is an act of sovereignty, induced by considerations of public expediency. It is the exercise of a power not derived from or dependent upon contract, but beyond and in hostility to it. * koa i *The public good, or the exigencies of a state, tiUt> J may require the taking of private property, without the consent of the owner, or the discharge of a debt, without the consent of the creditor; but the idea that the justification, in either case, rests on contract, or depends upon the assent of the holder, has scarcely the merit of plausibility.
 

 It is true, that in this case, the discharge of the debtor was obtained in South Carolina, the place designated in the contract for its performance. It may also be admitted, that the law of that state must govern in ascertaining the “ validity, nature, obligation and interpretation of the contract." (Story’s Conflict of Laws
 
 *506
 
 280.) In these particulars, the law of New York and of the place of performance was identical. The obligation of the debtor to pay according to his agreement, was recognised by the courts of South Carolina, by rendering judgment and issuing process against the defendant to enforce it. He was subsequently discharged, upon his own application, according to the provisions of an insolvent law of that state, not upon the ground of a condition to that effect in the contract, but because the state, in the exercise of its sovereignty, had so ordained. I do not perceive, that we are required by authority, principle or comity, to give that law an extra-territorial effect, under the circumstances disclosed by this bill of exceptions.
 

 It is, however, insisted by the defendant, that conceding that the law of South Carolina was inoperative as to the plaintiff,
 
 ex proprio
 
 vigore, by reason óf his being a citizen of another state, still, as it was optional with him, whether he would resort to the laws authorizing the imprisonment of his debtor or not, by electing to do so, he consented to be bound by them, and thus renounced his constitutional immunity. The plaintiff sued in the state court, and thereby consented to avail himself of the remedies provided by the laws of the state in reference to the collection of his demand; one of these was imprisonment of the debtor. Of course, any law existing at the time, or enacted subsequently to the making of the contract, affecting *that remedy, was obligatory upon the plaintiff, and ' all other suitors in the same forum; the subject was one pertaining to state legislation exclusively. The law in question went beyond this, and not only relieved the defendant from imprisonment, but assumed to discharge him from all obligation to comply with his agreement. The contract and the remedies to enforce it, are distinct subjects, and cannot be made identical, because treated of in the same statute.
 

 
 *507
 
 The cases to which we have been referred/ to sustain the position, “that all acts
 
 in pari materia
 
 are to be taken together as if they were one* law” (1 Doug. 50, 12), have no - application. The common law which obliges the debtor to satisfy the debt is not
 
 in pari materia
 
 with a statute which avoids the contract against the will of the creditor, and without any satisfaction whatever; and it would be a singular rule of evidence, which would infer from the attempt of this plaintiff to enforce the payment of the note in question, in the state court, an assent to a law which, on the petition of the debtor, would absolve him from its payment altogether. It has been held, that a party may waive a constitutional as well as a statute privilege, designed for his own benefit. (24 Wend. 337;
 
 Clay
 
 v.
 
 Smith,
 
 3 Peters 412.) The act of waiving must, however, be unequivocal. In the first case cited, the consent was in writing; in the second, the creditor made himself a party to the proceedings, and received a dividend under the state bankrupt law. It has never yet been decided, that a foreign creditor, by suing for a debt in a state court, adopted its insolvent laws, and thereby waived his constitutional immunity.
 

 The papers on which the attachment issued were sufficient to confer jurisdiction. The application states “ that such demand arose upon a judgment, which your applicant is informed and believes was obtained in or about the year 1842.” The information and belief refer to the
 
 time
 
 of the rendition of the judgment, not to the fact of its existence, or to the circumstance that the indebtedness of the defendant arose before it. Accord- * 508 1 fac*s last mentioned are deposed -* to positively, in the affidavit of the plaintiff accompanying the application. The judgment of the common pleas should be affirmed.
 

 Judgment affirmed.
 

 Welles and Watson, JJ., dissented.