## The Brighton Market Bank v. Eldridge G. Merick impleaded with another.

Defendant, a citizen of New York, made a note in June, 1858, payable to the order of other citizens at a bank in that state, four months after date. Before maturity the note was indorsed, for a valuable consideration, to the plaintiffs, who are a Massachusetts corporation. In 1859 defendant, still residing in New York, was discharged under the insolvent laws of that State. Whether this discharge is a bar to a suit brought on the note in Michigan by the indorsees, *quere;* the Court being equally divided on the question.

*Heard October 23d,* 1862. *Decided May 30th.*

Error to Wayne Circuit.

Plaintiffs in error brought suit against Moses Merick and Eldridge G. Merick, as makers of the following note:

" $562 50. OSWEGO, June 30th, 1858.

Four months after date we promise to pay to the order of J. H. Mack & Co., at the Lake Ontario Bank, five hundred and sixty-two [dollars, value received.

M. MERICK & Co.

(Endorsed) J. H. Mack & Co."

BRIGHTON MARKET BANK v. MERICK.

Eldridge G. Merick alone was served with process. His defense was an insolvent discharge, granted under the laws of the State of New York, September 28, 1859, in proceedings commenced July 4, 1859. The case was referred to W. P. Wells as referee, who reported the following facts:

"The plaintiffs are an incorporated bank in the State of Massachusetts, and were so before the making of the note, a copy of which is attached to the declaration. The said note was executed by the firm of Moses Merick & Co. at the time it bears date.

"At the time of the execution of the said note, the defendants, Moses Merick and Eldridge G. Merick, as well as J. H. Mack & Co., the payees of said note, were respectively residents of the State of New York, but at the time of the commencement of this suit, the defendant Eldridge G. Merick was, and still is, a resident of the State of Michigan.

"Before the maturity of said note the said J. H. Mack & Co., the payees of said note, which was made and delivered to them in said State of New York, for a consideration then moving from them to the plaintiffs, presented it for discount to the plaintiffs, who discounted it in the ordinary course of business, and have ever since been the holders thereof.

"On the 4th day of July, in the year 1859, at the town of Clayton, in the county of Jefferson, in said State of New York, the said defendant, Eldridge G. Merick, then being an inhabitant of said town of Clayton, and being also an insolvent debtor within the intent and meaning of an act of the State of New York, entitled "Of voluntary assignments made pursuant to the application of an insolvent and his creditors" did, in conjunction with as many of his creditors as said act required to join with him therein, present a petition to the County Judge of said county of Jefferson, a magistrate having jurisdic-

tion in the premises, praying that said insolvent's estate might be assigned for the benefit of his creditors, and that said defendant might be discharged from his debts, according to the provisions of said act. Said petition was verified according to the requirements of said statute. Thereupon such proceedings were had, in conformity with said statute, and before the said Judge, that afterwards, on the 28th of September, in the year 1859, in said county of Jefferson, the said Judge discharged the said Eldridge G. Merrick, by writing, under his hand and seal, from all his debts. The said discharge was in such terms as is set forth in the notice attached to the defendant's plea in this cause. The statute above mentioned was in full force at the time of the making of the note declared on.

"The only question of law raised in this case is, whether the discharge in insolvency above mentioned is a good plea in bar to an action upon the note in suit."

The referee, on a review of the authorities, held the defense not a valid one, and that plaintiffs were entitled to judgment for the amount of the note. But the Circuit Judge came to a different conclusion, and gave judgment for defendant.

*Jerome & Swift*, for plaintiffs :

Independent of the constitutional law hereafter to be discussed, it is well settled that the validity, nature and obligation of contracts are to be determined, and their interpretation and construction governed, by the law of the place of contract; which is either the place where the contract is made and executed, or where it is to be performed. *Story Confl. L.* §§ 241, 263, 280 ; 2 *Pars. on Cont.* 95 ; *Edw. on Bills*, 177, 182. And it is important to bear in mind that this is the rule, wherever the residence or domicil of the parties may be. *Story Confl. L.*, § 279.

Where the place of performance is specified in the contract, the law of that place is to govern ; otherwise, the

law of the place making it; on the ground of a tacit implication that the place of making the contract is to be its place of performance:—*Story Confl. L.* § 280.

We can find no case or authority that holds, independently of some positive statute, that the law of the place of performance has any greater weight or authority than the law of the place of making it, where no place of performance is mentioned.

It is also well settled that a defense or discharge, good by the law of the place where the contract is made, or is to be performed, is good everywhere:—*Story Confl. L.* § 331. And this is the law without reference to the residence or domicil of the parties:—*Story Confl. L.* § 340.

The note in suit in this case was made in the State of New York, by the defendants, then residents of the State of New York, and was made payable in that State, and delivered to persons then and still resident therein, and was indorsed and delivered before maturity, in Massachusetts, to citizens thereof. The defendant, while he was still a resident of the State of New York, was, under the insolvent law thereof, duly discharged from all his contracts. And we admit, that were it not for the Constitution of the United States, such discharge would be a complete bar to the plaintiff's action.

Under the Constitution of the United States it has been decided that where a promissory note is made, or a debt is contracted, in one State by a citizen thereof, to a citizen of another State, a discharge under the insolvent law of the former State will be no bar to an action upon such note or contract:—*Ogden v. Saunders*, 12 *Wheat.* 213, 358; *Boyle v. Zacharie*, 6 *Pet.* 348; *Watson v. Bourne*, 10 *Mass.* 337; *Woodhull v. Wagner*, 1 *Bald.* 296; *Springer v. Foster*, 2 *Story*, 383; *Fiske v. Foster*, 10 *Metc.* 597; *Palmer v. Goodwin*, 32 *Me.* 535; *Tebbetts v. Pickering*, 5 *Cush.* 83; *Clark v. Hatch*, 7 *Cush.* 455; *Ilsley v. Merriam*, 7 *Cush.* 242; *Bancker v. Fisk*, 33 *Me.* 316; *Gardner*

*v. Oliver Lee's Bank*, 11 *Barb.* 558; *Poe v. Duck*, 5 *Md.* 1; *McKim v. Willis*, 1 *Allen*, 512.

But an effort is made to distinguish the case before the Court from the cases above cited upon two grounds:

*First*, That those were cases between the original parties to the contract, whereas this is the case of an indorsee.

*Secondly*, That the note in this case is expressly made payable in the State of New York, whereas, in the cases above cited, no place of payment was specified.

In order to arrive at a correct conclusion on the first point, let us look at the reason given for the decisions in those cases. In all of them, as well as in the cases hereafter cited, the decisions are put expressly upon the ground, that, under the Federal Constitution, the laws of one State can not affect the rights of creditors who are citizens of other States, and that the *lex loci contractus*, which would otherwise apply, is of no force:— *Ogden v. Saunders*, 12 *Wheat.* 213; *Clay v. Smith*, 3 *Pet.* 411; *Towne v. Smith*, 1 *W. & M.* 129; *Watson v. Bourne*, 10 *Mass.* 340; *Braynard v. Marshall*, 8 *Pick.* 196; 2 *Pars. on Cont.* 705.

It would certainly be a strange anomaly if, in this great commercial country, commercial paper, which is principally valuable on account of its negotiability, should, in hands of any but the original parties, be cut off from the benefit of the rule which exempts citizens of one State from being affected by the insolvent laws of another State.

And the following cases hold that the rule does extend to commercial paper in the hands of assignees and indorsees:—*Braynard v. Marshall*, 8 *Pick.* 194; *Savoye v. Marsh*, 10 *Met.* 584; *Towne v. Smith*, 1 *W. & M.* 115; *Bancker v. Fisk*, 33 *Me.* 316; *Houghton v. Maynard*, 5 *Gray*, 552; *Fessenden v. Willey*, 2 *Allen*, 67; *Eaton v. Sweetzer*, 2 *Allen*, 70, note ; *Anderson v. Wheeler*, 25 *Conn.* 603; *Felch v. Bugbee, Law Register, Dec.* 1860.

And we have been unable to find a case that holds

11 MICH.—2 A.

the contrary. So that, upon principle and authority, we think it is clear that there is nothing in the first point.

As to the second point, the fact that it is payable in that State no more makes it a New York contract than the fact that it was executed there.

Now all the cases above cited proceed upon the ground that, under the Constitution of the United States, the law of the place of contract does not prevail so far as discharges under insolvent laws are concerned. And those decisions in principle govern this case. We know that the case of *Scribner v. Fisher*, 2 *Gray*, 43, holds as is contended for on the other side. That decision, however, seems to be based upon the express statute of that State. It certainly is not to be sustained upon principle, nor, as it seems to us, is it consistent with other decisions in the same State. See especially the case of *Marsh v. Putnam*, 3 *Gray*, 551, where it is held that the place of payment does not control in such cases. The following authorities fully sustain our position: — *Demerett v. Exchange Bank*, 10 *Law Rep.* 606; *Agnew v. Platt*, 15 *Pick.* 417; *Anderson v. Wheeler*, 25 *Conn.* 603; *Donnelly v. Corbett*, 3 *Selden*, 504; *Felch v. Bugbee, Law Reg. Dec.* 1860.

*T. Romeyn*, for defendant in error:

1. The defendants, citizens of New York, promised to and contracted with J. F. Mack & Co., also citizens of New York, by a note payable at a New York bank. They were not privy to the transfer of the note by the latter. They are not to be deemed, in law, to have contracted with the indorsees, the present holders, residing in Massachusetts. The indorsement created a *new* contract, between the indorsers and the indorsees, but not between the latter and the makers.

As a matter of principle, the makers of a negotiable promissory note do not contract with the indorsees, any more directly than do the obligors contract with the

assignees of a bond, running to the obligees or their assigns; or than do the grantors in a deed with cove-nants running with the land, or directly to the assignees of the purchaser, contract with the vendees or the assignees.

In all such cases the assignee has the full benefit of the original agreement, either by direct action in his own name in equity, or, in many States, even at law; and, by the common law, in the name of the original grantee. The fact that, not at common law, but by commercial usage, an indorsee of such a note may *sue in his own name*, does not vary the principle, that he is not a party to the original contract. He takes and holds by virtue of a new contract with his immediate indorser.

Such is the view taken of the contract of indorsement by the courts of the United States: — *Bullard v. Bell*, 1 *Mas.* 251; *Young v. Bryan*, 6 *Wheat.* 146; *Mollan v. Tor-ance*, 9 *Wheat.* 537; *Town v. Smith*, 1 *Wood. & M.* 119; See also, 4 *Mason*, 429; 2 *McLean*, 133; 5 *How.* 290; 1 *H. Bl.* 606.

The decisions to the contrary are not founded on sound legal principles, and the conclusions of the courts deliver-ing them refer to and rest, in part, upon other facts, distinguishing those cases from the present.

2. It is not in accordance with the *weight* of authori-ties to hold that a contract made and delivered in one State, and, by its terms, *expressly to be performed there*, by the promissor, he then being a citizen of it, is not barred by a discharge in that State, even though it was originally made with a citizen of another State. This is plaintiff's case in the most favorable light for him.

Such is the *weight* of the authorities. They are thus summed up by Parsons: — (2d *Pars. on Cont.* 593, note). "The proposition that a State insolvent law may operate a discharge of a debt contracted by one of its own citi-zens with the citizens of another State, when the contract is on its face to be performed within the *State* granting

the discharge, is one which stands by no means without dispute at this day. We think, however, that the *weight of authority sustains* the proposition," &c. See *Whitney's case*, 35 *N. H.* 458; 33 *Me.* 316.

In this conflict of authorities, the Court should select those which prevail in the courts of the States where the parties resided, to wit: the States of Massachusetts and New York: — *Parkinson v. Scoville*, 19 *Wend.* 150; *Donelly v. Corbett*, 7 *N. Y.* 500; *Scribner v. Fisher*, 2 *Gray*, 43; 5 *Gray*, 509; 5 *Gray*, 522.

The decisions in the courts of the United States are not opposed to this view.

The case of *Ogden v. Saunders*, 12 *Wheat.* 213, was one of a contract directly between citizens of different States, and payable generally.

The cases cited from Massachusetts, New Hampshire, and Maine, show the importance of confining the decisions to the facts. See also, 2 *Gray*, 44; 3 *Gray*, 551; 10 *Fost.* 466; *May v. Breed*, 7 *Cush.* 39.

See the comments on the cases in *Cook v. Moffat*, 5 *How.* 295; and in *Brigham v. Henderson*, 1 *Cush.* 433. There are no direct or authoritative decisions in Circuit Courts. The case of *Demerett v. Exchange Bank*, 20 *Law Rep.* 606, is inapplicable upon the facts. It contains the speculations of Judge Curtiss at the Circuit.

The whole doctrine on the subject, so far as it denies the right of the States to pass bankrupt laws in the absence of such legislation by Congress, is wrong in principle, and the application of the decisions against their validity should not be extended.

See the opinion of Judge Taney in *Cook's case*, 5 *How.*, Mr. Calhoun's speech on the Bankrupt Law, on 2d June, 1840, page 393; Mr. Benton's Thirty Years in the Senate, 2d volume.

Mr. Webster in his speech admitted that, if the laws impaired the obligation of contracts, then, in his view,

they would be invalid, even as to subsequent contracts between citizens of the same State.

CAMPBELL J.:

This suit was brought by plaintiff, a corporation of Massachusetts, against defendants, upon a promissory note made by them in New York, while citizens of that State, to the order of J. H. Mack & Co., who were also citizens of New York, payable at a bank in New York, and indorsed to plaintiff before maturity. Defendant, Eldridge G. Merick, who is the only party served with process, sets up in bar of the action a discharge under the insolvent laws of New York, releasing him from his debts. These laws were in existence when the note was made; and the proceedings were regular, or are so to be regarded in this action.

There is therefore but one point presented for our consideration, which is, whether the discharge is operative upon the rights of the plaintiff.

The first question to be determined is, whether the plaintiff, by the indorsement, becomes a party to the contract with the maker, in such a way that an agreement can be alleged between maker and indorsee, to pay the latter the amount of the note in controversy. This is a well settled and elementary principle. The maker promises to pay to any one who may become the lawful holder in the way prescribed by the law. The liability is direct and unqualified. As the question only assumes importance when viewed in connection with certain principles of the insolvent law, it will be sufficient to refer to such cases as hold that, for all purposes within the rules applicable to insolvent discharges, as affecting non-residents, the rights of an indorsee are the same as if he had been named as payee in the note. If the discharge would not have affected his rights as a non-resident in the one case, it will not in the other:— *Baker v. Wheaton*, 5 *Mass.* 509; *Braynard*

*v. Marshall*, 8 *Pick.* 194; *Fessenden v. Willey*, 2 *Allen*, 67; *Wheelock v. Leonard*, 20 *Penn. St.* 440; *Felch v. Bugbee*, 45 *Me.* (9 *Am. Law Reg.* 104); *Bancker v. Fisk*, 33 *Me.* 316; *Houghton v. Maynard*, 5 *Gray*, 552; *Anderson v. Wheeler*, 25 *Conn.* 603; *Savoye v. Marsh*, 10 *Met.* 594.

It is admitted that if this note had been executed and delivered in New York to a non-resident, without expressing upon its face that it was payable there, a discharge granted in New York would have no binding force against. the holder continuing to be a non-resident. This doctrine is never denied to have been settled by *Ogden v. Saunders*, 12 *Wheat.* 213; and is expressly recognized by numerous authorities, all of which assert that under ordinary circumstances a contract with a non-resident can not be discharged, unless he has so assented to, or interfered in, the proceedings as to have submitted his interests to the action of the insolvent court:— *Clay v. Smith*, 3 *Pet.* 411; *Donnelly v. Corbett*, 3 *Seld.* 500; *Norton v. Cook*, 9 *Conn.* 314: *Potter v. Kerr*, 1 *Md. Ch. Dec.* 275; *Poe v. Duck*, 5 *Md.* 1; *Palmer v. Goodwin*, 32 *Me.* 535; *Whitney v. Whiting*, 35 *N. H.* 457; *Collins v. Rodolph*, 3 *Green (Iowa)*, 299; *Pugh v. Russell*, 2 *Blackf.* 394; *Watson v. Bourne*, 10 *Mass.* 337; *Bradford v. Farrand*, 13 *Mass.* 18; *Agnew v. Platt*, 15 *Pick.* 417; *Fiske v. Foster*, 10 *Met.* 597; *Woodbridge v. Allen*, 12 *Met.* 470; *Tebbetts v. Pickering*, 5 *Cush.* 83; *Isley v. Merriam*, 7 *Cush.* 242; *Clark v. Hatch*, 7 *Cush.* 455; *Dinsmore v. Bradley*, 5 *Gray*, 487; *McKim v. Willis*, 1 *Allen*, 512; *Eaton v. Sweetzer*, 2 *Allen*, 70; and the cases cited under previous head. These citations might be extended indefinitely. They are only made now because they have an important bearing upon the discussion of the supposed distinction between contracts generally and contract with an expressed place of performance.

It was held in *Scribner v. Fisher*, 2 *Gray*, 43, that a contract which, by its terms, was expressly to be performed in Massachusetts, although in favor of a non-resident who

had never submitted himself to the laws of Massachusetts, might be absolutely discharged by insolvent proceedings in that State. This case is, so far as we can ascertain, the only direct authority for such a position, except some decisions of the same Court based upon it, and adopting it. It was not concurred in by Judge Metcalf, who delivered an able dissenting opinion. The decision is, upon this point, entirely unreasoned; and seems to be based upon the claim that the United States Courts are not disposed to enlarge the effect of *Ogden v. Saunders*, and that there is some difference between that and the case then under consideration. The respect which we have always entertained for the Massachusetts decisions renders it proper for us to examine into the authority of this case somewhat carefully.

The exact question decided in it has been passed upon by the Courts of other States; and they have arrived at a different conclusion from that adopted in *Scribner v. Fisher*. In *Donnelly v. Corbett*, 7 *N. Y.* 500, it was held that a note payable to a citizen of New York, at a bank in South Carolina, was not discharged by an insolvent proceeding in the latter State. The case of *Anderson v. Wheeler*, 25 *Conn.* 603, was, in all its leading features, a counterpart of the case before us; and it was there held that a note made and payable expressly in New York by one citizen to another, and indorsed to a non-resident, was not affected by a New York discharge.

The case of *Felch v. Bugbee*, 45 *Me.* (9 *Am. Law Reg.* 104), was one where notes made in Boston between citizens, and payable in Boston, but indorsed to a citizen of Maine, were held unaffected by a Massachusetts discharge. These were all carefully argued cases, where the point was clearly presented; and in *Felch v. Bugbee* reliance was had on *Scribner v. Fisher*, but the Court declined to follow it. In *Demerett v. Exchange Bank* (*Law Reporter for Dec.* 1858), Judge Curtis also criticises *Scribner v.*

*Fisher*, and declares it not to be law.    See also, *Hale v. Baldwin, Law Rep. March*, 1862.

There can be no doubt, therefore, that so far as regards the number of adjudged cases in courts of high repute, the weight of authority is not in favor of *Scribner v. Fisher*. And we are compelled to examine, as far as may be, the principles upon which it depends. It rests evidently upon the idea that, when parties contract with a view to performance in a particular State, their contract becomes entirely subject to the state law, and may be released by any action provided by it for the discharge of debtors from their liabilities. In other words, that the local law becomes incorporated into the contract, in the same manner, and to the same extent, as if expressed in it.

Whatever force there may be in this reasoning, it does not in any way serve to distinguish the contract in question from those where no special place of performance is expressed. No contract can be made which is not, in the eye of the law, subject to be governed by the laws of some State or country indicated by and deducible from the contract itself. That a contract is in various respects governed by the law of the place of performance, is as true where that place is inferred as where it is expressed. And the law does not leave a contract expatriated, and floating about in a condition of outlawry, simply because it is silent as to the place of performance. Every agreement is subject to recognized · legal authority in one place or another. And a note payable generally is subject to the law of the place where it first becomes operative, unless a different rule is deducible from its terms: — *Whitney v. Whiting*, 35 *N. H.* 457; *Peck v. Hibbard*, 26 *Vt.* 698; *Story on Confl. L.* § 317.

Whatever differences may exist among Courts in determining what shall be regarded as the *lex loci contractus*, there is no ground which we have been able to discover for making any distinction between contracts which are

*expressly,* and those which are *impliedly,* to be performed in the same place. And we are therefore led to inquire whether a contract made and to be executed in one State, in favor of a citizen of another, can always be discharged by the law of its locality.

The case of *Ogden v. Saunders,* 12 *Wheat.* 123, was argued in connection with several other cases, in which discharges had been granted of contracts between citizens of the same State. It had previously been decided, in *Sturges v. Crowninshield,* 4 *Wheat.* 122, that an insolvent law could not lawfully discharge pre-existing debts, incurred anterior to its passage; and, at the same time, it was held that the power of Congress to pass bankrupt laws was not exclusive. The extent to which state laws might go was not determined. In *McMillan v. McNeill,* 4 *Wheat.* 209, decided at the same term, it was held that a contract made in South Carolina between a citizen and a firm, one of which resided there, could not be discharged either by an English discharge of the English partner, or by a discharge in Louisiana of the American partner who had removed there; although the Louisiana law was passed before the debt was contracted. The decision was brief, and has not been regarded as very clear as to the extent it was designed to cover. In *Ogden v. Saunders,* and the cases argued with it, the first question discussed was whether a state insolvent law, discharging subsequent contracts made between citizens of the same State where the discharge was obtained, and in whose courts it was pleaded, was unconstitutional. It was held such a law was not invalid. The next question was, whether such a discharge could affect citizens of other States. This was decided in the negative by a majority of the Court, Mr. Justice Johnson delivering the opinion; and the three judges, who joined with him in deciding the first question, dissented on this — the other three coinciding with him. In *Boyle v. Zacharie,* 6 *Pet.* 348, upon an inquiry made by Mr.

Wirt, Chief Justice Marshall said "the Judges who were in the minority of the Court upon the general question as to the constitutionality of state insolvent laws, concurred in the opinion of Mr. Justice Johnson, in the case of *Ogden v. Saunders.* That opinion is therefore to be deemed the opinion of the other Judges who assented to that judgment. Whatever principles are established in that opinion, are to be considered no longer open for contro- versy, but the settled law of the Court." And on the final decision of the same case (6 *Pet.* 645), Mr. Justice Story, in delivering the unanimous opinion of the Court, refers to the same matter, and says, " the ultimate opinion delivered by Mr. Justice Johnson in the case of *Ogden v. Saunders,* 12 *Wheat.* 213, 358, was concurred in and adopted by the three Judges who were in the minority upon the general question of the constitutionality of state insolvent laws, so largely discussed in that case. It is proper to make this remark in order to remove an erro- neous impression of the bar, that it was his single opinion, and not of the three other Judges who concurred in the judgment." Judge Duvall who, with the Chief Justice and Judge Story concurred with Mr. Justice Johnson in deciding *Ogden v. Saunders,* was also present and concur- ring in the decision of *Boyle v. Zacharie.* In *Cook v. Moffat,* 5 *How.* 295, it was held the questions decided were no longer open. We may therefore, with propriety, look not only to the conclusions announced, but also to the reasons on which those conclusions were based, to understand the scope of the decision in *Ogden v. Saunders.* In that case the plaintiff was a citizen of Kentucky, and payee of a draft drawn upon and accepted by a citizen of New York. The acceptor's contract was beyond question governed by the laws of New York. But a discharge granted in New York, under a previously existing insol- vent law, was held void. The third conclusion of Judge Johnson is as follows : " When in the exercise of that power

[of passing bankrupt laws] the States pass beyond their own limits, and the rights of their own citizens, and act upon the rights of citizens of other States, there arises a con- flict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other States, and with the Constitution of the United States."

The reasoning by which this conclusion was reached was based mainly upon the constitutional provisions, regulat- ing the judicial power of the United States, which are held to prevent the States from exercising complete judicial sovereignty over any but their citizens, unless where it is submitted to voluntarily. The English doctrine of general authority to dissolve contracts in the country of their locality, is held to be unsound, and repudiated, without reference to any constitutional difficulty, as not warranted by international law against non - residents. The same doctrine is held still more inadmissible, as applied to States of the Union, and as inconsistent with the provision giving every citizen of one State a resort to the Courts of the Union against citizens of another State. And, inasmuch as all insolvent proceedings are in their nature judicial, the right of any State to draw before its tribunals those not subject to its jurisdiction, is denied.

The principles laid down by Mr. Justice Johnson require that the State should have jurisdiction, not only over the contract when made, but also over the parties to it. And the reasoning, as well as the language of the decision, very plainly requires the jurisdiction over the parties to exist when the judicial proceedings are had to discharge the debt; as it must necessarily, in proceedings in favor of the creditor and against the debtor, to establish the personal liability of the latter. It is very well settled, that the right of a citizen of one State to sue in a Court of the United States, depends upon his present and not his

former citizenship: — *Morgan's heirs v. Morgan*, 2 *Wheat.* 290; *Mollan v. Torrance*, 9 *Wheat.* 537. And any person who changes his residence, in good faith, becomes entitled to sue in those Courts his former fellow citizens; while, on the other hand, he can not sue his present fellow citizens.

Such we understand to be the conclusions arrived at in *Ogden v. Saunders ;* and we understand also the great body of decisions referred to as leading to the same result. In examining the decisions in Massachusetts, we have been unable to extract from them any harmonious principles, which we can safely rest upon in holding otherwise. And the decisions elsewhere do not lead to any other definite result; but, in the main, harmonize entirely with *Ogden v. Saunders ;* which is recognized as authority, although not always regarded as properly decided.

The doctrine that the *lex loci contractus* draws after it the perpetual and complete jurisdiction over the contract, while it is the basis of the decision in *Scribner v. Fisher*, has not been uniformly adhered to in Massachusetts. In *Prentiss v. Savage*, 13 *Mass.* 20, a discharge in Jamaica, of a Jamaica contract, was held void, although under a previously existing insolvent law, on the ground that the law was unreasonable in not providing for sufficient notice to creditors; and on this account the Court held it could not have been designed to bind non‑residents. Its language, however, was unqualified, and we have no laws more express in their terms that the debt shall be discharged. In *Braynard v. Marshall*, 8 *Pick.* 194, a note made in New York, but indorsed before maturity to a holder in Massachusetts, was held not affected by a New York discharge. In *Agnew v. Platt*, 15 *Pick.* 417, a New York debt, incurred by a partnership dealing in New York to a New York citizen, was held not barred by a discharge there, because one partner lived in Massachusetts. In *Fiske v. Foster*, 10 *Met.* 597, a Boston acceptance of a draft drawn

in Maine, in favor of a Maine citizen, was held not barred by a Massachusetts discharge. In *Ilsley v. Merriam,* 7 *Cush.* 242, a sale in Massachusetts, by a resident agent to a citizen, was held not to subject his principal to the insolvent laws. In *Marsh v. Putnam,* 3 *Gray,* 551, a contract made and to be performed in another State was held lawfully discharged in Massachusetts, because the parties were citizens of Massachusetts. These decisions are all inconsistent with the idea that the *lex loci contractus* is absolutely conclusive; while some of them, especially the latter, give it no effect whatever.

In *Ilsley v. Merriam,* above cited, and in *Fessenden v. Willey,* 2 *Allen,* 67, it was held that the liability to state insolvent laws was not in any sense an equity attaching to a contract, which passed with it so as to bind persons who would be bound by ordinary equities; and therefore an indorsement of a note past due, to a non-resident, took it beyond the reach of local insolvent laws, as effectually as if made before maturity.

While the doctrine of the application of the *lex loci contractus* has been thus substantially disregarded, that of citizenship does not seem to have been adhered to on any settled principle. Thus, in *Beal v. Burchstead,* 10 *Cush.* 523, a note payable to a non-resident which was admitted not originally subject to Massachusetts insolvent law, was held properly discharged by proceedings after he had become a resident. But in *Brigham v. Henderson,* 1 *Cush.* 430, it was held that a citizen of Massachusetts remained liable to be affected by a discharge of his previous claims after he had become a citizen of another State.

Finding, therefore, no authority except *Scribner v. Fisher,* and decisions resting upon it, to maintain the validity of the discharge before us, and not being able to deduce any principle upon which that case can be harmonized with the general course of decisions, we are unable to

yield to its weight. We think the case before us is clearly within the reasoning and authority of *Ogden v. Saunders*. The plaintiff never was in the State of New York, and never, therefore, became amenable to its judicial authority, either temporarily or permanently.

Judgment should be rendered on the referee's report for the plaintiff, with costs of both Courts, and reversing the judgment below.

CHRISTIANCY J. concurred in this opinion.

MANNING J.:

The note was made in the State of New York, where the makers and payees resided, and is payable to the order of the payees at a bank in that State. It is not payable to bearer, and consequently could not be transferred to the plaintiffs without the indorsement of the payees. And it is conceded that as between the parties to the note the discharge in bankruptcy would be good.

The plaintiffs are a corporation in the State of Massachusetts, and discounted the note before maturity. If they are not bound by the discharge, it must be because they are indorsees or citizens of another State.

The question is not between the plaintiffs and their indorsers on the contract of indorsement. It is between them and the makers of the note, on the contract between the makers and payees to which they have succeeded as indorsees.

As indorsees of the note, they can have no greater rights against the makers than their indorsers had, except such as grow out of the rights of a *bona fide* holder of this description of paper.

The right claimed is clearly not one growing out of the rights of a *bona fide* holder. And we must therefore look in some other quarter for its basis, if it has any.

Is there anything in the citizenship of the plaintiffs to

rest it upon? If there is, it must be in one of two provisions to be found in the Constitution of the United States—one giving the citizen of each State all the rights and immunities of citizens in the several States; the other giving jurisdiction to the Federal Courts between citizens of different States.

The first I have always understood to be nothing more or less than a guaranty to a citizen of one State, going into another State, of all the rights of a citizen of the latter. I believe nothing more has ever been claimed for it. I have yet to learn that it was intended to give him greater rights, whatever may be claimed for, or be the practical operation of, that part of the Constitution giving jurisdiction to the Federal Courts between citizens of different States.

The object of this last provision, it seems to me, was to provide a court to settle differences between citizens of different States according to state laws, and not otherwise; on the supposition that alienations might arise between States, and for a time interfere with the due administration of justice between the citizens of such States in the state courts. Unless the Federal Courts in the exercise of this jurisdiction recognize the laws of the State, as expounded by the state courts, as their rule of action, to the same extent the state courts are bound by the decisions of the Federal Courts on questions arising under the Constitution and laws of the Federal Government, the law of the contract may be different in the two courts. One may so interpret the law and the contract made under it as to give effect to the contract, and the other so as to give a different or no effect whatever to it. This would place the citizen of a State and a non-resident on a footing of inequality, instead of one of equality—giving the non-resident greater rights than the resident, as both tribunals are open to him, and he is at liberty to seek redress in the one most favorable to his interest, while the citizens

of a State are confined to the state courts for the measure of their rights. Such a state of things must be regarded as a great evil in a country governed by even handed justice. Let it not be said that it is an imaginary evil. It has actually occurred: — 5 *How.* 134. A rule of construction that leads to such results cannot but be unsound. It sacrifices the end to the means used to attain it. Not necessarily so, for then there would be some excuse for it. It ignores the spirit of the Constitution, in overlooking what is a necessary element in every sound rule of construction, where it can be seen, viz: the thing to be achieved by the instrument to be interpreted. Equality of the citizen, and not inequality is the spirit of our institutions, both federal and state.

But the evil does not stop here. It goes further. It strikes with a heavy hand at the local legislation and laws of the States. If the state courts make a wrong decision, or promulgate as law what is distasteful to the people, their further action in the same direction may be arrested by state legislation. If the federal courts in deciding on state laws do the same thing, state legislation is powerless to arrest the evil, and Congress can not, if it would, legislate for a State; and what would be its effect if it should?

*Ogden v. Saunders,* 12 *Wheat.* 213, is not a parallel case with the one before us. The question there was between the payee and acceptor of a bill of exchange, who were residents of different States when the bill was accepted. The decision was by a divided court. Judge Johnson and three of the other judges held the state bankrupt law constitutional, while the three judges only, who held the law unconstitutional, concurred with Judge Johnson, in the final decision of the case. The correctness of the decision on principle has been frequently criticised, and from the opinions of the judges in *Cook v. Moffat,* 5 *How.* 306, it would seem to be far from being satisfactory to some of the judges of the Court.

BRIGHTON MARKET BANK *v.* MERICK.

The effect to be given to the bankrupt laws of another State is a question of comity, and not one of strict right. As such, I think we should in all cases give effect to them, when they do not interfere with the bankrupt's property within the State to the prejudice of our own citizens, and we can consistently do so.

I think the judgment of the Circuit Court should be affirmed.

MARTIN CH. J. concurred in the result of this opinion.

The Court being thus equally divided, the judgment of the Court below for the defendant was affirmed.