business as well; and with a reasonable provision in such direction. the courts will not interfere. In re New York Cent. & H. R. R. Co., 77 N. Y. 248; In re Staten Island Rapid-Transit Co., 103 N. Y. 253, 8 N. E. 548. We see no reason to doubt the good faith of the plaintiff's application; nor do we think it open to controversy that the plan of the plaintiff is better than that of the defendants, both for the plaintiff and the public. In such a situation, under the authorities in this state, the defendants' wish not to sell must be subordinated. to what seems to be for the general good.

The judgment should be affirmed, with costs. All concur.

(21 App. Div. 388.)

## MERCHANTS' NAT. BANK OF CITY OF NEW YORK v. COLUMBIA SPINNING CO. et al.

(Supreme Court, Appellate Division, First Department. October 8, 1897.)

1. ATTACHMENT—AFFIDAVIT—SUFFICIENCY.
    In an action on a note payable April 18, 1897, an attachment was obtained on April 15, 1897, upon an affidavit alleging that defendant executed and delivered to plaintiff its agreement in writing that, in case of its failure and insolvency, all claims or demands held by plaintiff against defendant should, at the option of the plaintiff, become due and payable, and alleging also defendant's failure and insolvency, the election of plaintiff that the note should become due and payable at once, notice to defendant, etc. *Held* that, from the allegation of execution and delivery of the agreement, it necessarily appeared that it was in existence on or prior to April 15th, and that the affiant was not called upon to negative a presumption that it did not continue in effective operation on that date as to the note in suit.

2. SAME.
    *Held*, further, that it was not requisite to present the agreement itself to the court.

3. SAME.
    The use of the word "agreed," in the connection in which it was employed, did not characterize the language which follows it as the legal conclusions of the affiant, instead of the context of the writing or its purport.

4. SAME—ALLEGATION OF INSOLVENCY.
    The allegation of the defendant's insolvency was based on the statement of its president. *Held*, that it was made in the ordinary course of business, and was the statement of the defendant.

Appeal from special term.

Action by the Merchants' National Bank of the City of New York against the Columbia Spinning Company and Valentine P. Snyder and others. From an order vacating an attachment, plaintiff appeals. Reversed.

Argued before PATTERSON, RUMSEY, WILLIAMS, O'BRIEN, and PARKER, JJ.

George Zabriskie, for appellant.
Arthur C. Rounds, for respondents.

PARKER, J. In support of the order of the special term vacating the attachment, it is urged that the affidavit is insufficient, in that it does not show that the note in suit was payable when the attach-

ment was obtained.   By the terms of the note, it matured April 18, 1897, and the attachment was issued April 15th.   The affiant sought to show that the note became payable on the 15th day of April, 1897, because of action taken by the plaintiff, under and by virtue of an agreement in writing between it and the maker of the note.   The sufficiency of the allegations in this respect is challenged.   They read as follows: .

"The said defendant also executed and delivered to the said bank its agreement in writing whereby the said defendant agreed that, in case of its failure or insolvency, all or any claims or demands against the defendant held by the said bank should, at the option of the said bank, immediately become due and payable. The said defendant has failed in business, and is insolvent, and is about to make an assignment of this property, as I have this morning been informed by Stephen W. Hays, the president and one of the directors of the defendant, in a conversation with him; and the said bank has elected that the note aforesaid should immediately become due and payable, and on the 15th day of April, 1897, the said bank presented the said note for payment at the place therein in that behalf mentioned, and demanded payment thereof, and payment was refused; and the said note remains wholly unpaid, except the sum of $18,964.49, and due notice of such election, presentment, demand, and nonpayment has been given by the said bank to the said defendant."

It is first said that it does not appear that the agreement was in force April 15, 1897, and in effective operation as to the note in suit. It seems otherwise to us.   While the date of the agreement is not given, it necessarily appears that it was in existence on or prior to April 15th; otherwise, its execution and delivery could not have been alleged.   That fact being made to appear, the affiant was not called upon to show that the agreement had not been canceled, or to negative every other conceivable hypothesis by which the note could have been relieved from the operation of the agreement.

The respondents' second contention is that the agreement should have been presented to the court, so that it could have determined whether the payment of the note was accelerated by its provisions. It is difficult to discover a reason for presenting the agreement to the court which would not be applicable to the note in suit.   Both instruments are in writing, and in the possession of the bank; and the cashier states in his affidavit that he has personal knowledge of them, and of the transactions between the bank and the defendant; and in neither case does he present an exact copy of the written instrument in its entirety.   All evidence submitted on an application for an attachment must be by affidavit.   No other is competent.   It quite frequently happens, therefore, that the best evidence cannot be produced.   In such case it is sufficient if the affidavit produce legal evidence which proves, to the satisfaction of the judge, the fact alleged (Hanson v. Marcus, 8 App. Div. 318, 40 N. Y. Supp. 951); and an affiant's statement of their purport may constitute such legal evidence.   It has been so held as to a variety of written instruments: Assignments of the claim in suit (Hall v. Stryker, 27 N. Y. 596); promissory notes in suit, and notice of protest (Ladenburg v. Bank, 5 App. Div. 219, 39 N. Y. Supp. 119; Waterbury v. Waterbury, 76 Hun, 51, 27 N. Y. Supp. 1114); judgments on which suit is brought (Donnelly v. Corbett, 7 N. Y. 500); and executions and their return (Con-

way v. Hitchins, 9 Barb. 378). There is no distinction in principle between writings of the character above mentioned and the writings in question.

The respondents insist that the use of the word "agreed" shows that the affiant was stating the legal conclusions drawn by him from the agreement, instead of the purport of it. If the word "promised" had been used, instead of "agreed," this suggestion would hardly have been made. "Promised" is the word almost always used in affidavits for attachments on promissory notes. If, in this case, the agreement for accelerating the maturity of the note had been embodied in the note, and the affidavit had stated that the defendant made its promissory note, whereby it promised to pay, six months after date, or immediately if it became insolvent, there would be no hesitation in holding the affidavit sufficient. The precedents are too firmly established to tolerate, at this time, the inquiry whether, by the use of the word "promised," an affiant, in that which follows it, states legal conclusions, and not facts. But one meaning of the verb "to agree" is "to promise," and the two words are given as synonyms by the Century Dictionary. It seems to us, therefore, that the use of the word "agreed," in the connection in which it is employed, should not be held to characterize the language which follows as the legal conclusions of the affiant, instead of the context of the writing or its purport. The authorities relied upon at special term are not in conflict with this view. In Ladenburg v. Bank, 87 Hun, 269, 33 N. Y. Supp. 821, the affiant, having no personal knowledge of the presentation and protest of the bills in suit, said that his information was founded upon a cable message. He did not state the contents of the cable message or its purport, nor show that its language referred at all to the bills in suit, nor to what subject it related. Thus, it appears that the court was not advised as to what was in the cablegram. In this case the court is at least informed of the contents and scope of the agreement. The principle decided in Hoormann v. Cycle Co., 9 App. Div. 579, 41 N. Y. Supp. 710, was that the mere averment of facts as upon personal knowledge is not sufficient, unless the inference can fairly be drawn from the facts and circumstances stated that the affiant has personal knowledge. In this case it appears that the position of the affiant was such that he would necessarily have personal knowledge of these writings, but, in addition, he states that he had personal knowledge of the transactions between the parties.

The allegation of insolvency was based upon the statement of the president, who was also one of the directors; and the respondents insist that the statement was not made in the course of any business transaction in which he was authorized to speak for the company, and therefore the statement was not that of the defendant. It seems to us that the statement was made in the ordinary course of business. The president was the executive officer of the defendant, and, as such, authorized to represent it within the lines of its usual business. It wished to borrow money, and applied to the plaintiff for a loan. The loan was made, and, to further assure the plaintiff against loss on account of it, the defendant executed a writing by which it

Sup. Ct.)                    IN RE HART.                    445

promised that, in the event of its insolvency, the note should at once become payable. It had the right to make the agreement, and, having made it, was in duty bound to carry it out in good faith, the doing of which required the statement of fact made by the defendant's president.

The order should be reversed, with $10 costs of motion and printing disbursements, and the motion denied, with $10 costs. All concur.

(21 Misc. Rep. 503.)

## In re HART.

(Supreme Court, Special Term, Kings County. October 26, 1897.)

ELECTIONS—BALLOTS.
When more than one justice of the supreme court are to be elected, they are to be voted for indiscriminately for the full term, and no one of them can be designated as candidate for successor to any particular justice.

Application by Coleridge A. Hart for a mandamus to compel the secretary of state to certify to the board of elections of the city of Brooklyn that the certificates of nomination of the petitioner by the Prohibition party and an independent body named "Independent Citizens' Organization" for justice of the supreme court in the Second judicial district, filed in his office, are in words "to fill vacancy in place of Calvin E. Pratt, deceased." The secretary of state certified the nomination of the petitioner, but omitted this designation. The contention is that as Calvin E. Pratt, a justice of the supreme court, died on August 3, 1896, the election of his successor at the general election on November 3, 1896, was void, for the reason that such election was "less than three months after the vacancy" occurred, in violation of section 4 of article 6 of the state constitution. Denied.

Coleridge A. Hart, in pro. per.
The Attorney General, opposed.