FIRST NAT. BANK OF HOOSICK FALLS v. WALLACE et al.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

ATTACHMENT—AFFIDAVIT—AVERMENT OF FACTS.

> An affidavit filed in support of an attachment against the property of a firm on the ground that it had disposed of its property with intent to defraud creditors stated that W., one of the partners, had general control of partnership funds, and appropriated large sums thereof to the payment of his individual debts, and that he transferred to his wife his individual property a short time before the assignment, and that the assignment was made with intent to defraud. Other affidavits showed that the other members of the firm did not know much about its financial condition, that W. had used partnership funds to pay his individual debts, but there was nothing to show any connivance between W. and his co-partners. *Held*, that such affidavits did not state any facts from which the court could infer any fraudulent intent on the part of the firm, but merely showed that W. had defrauded his co-partners.

Appeal from special term.

Action by the First National Bank of Hoosick Falls against Truman J. Wallace, Edward M. Jones, and William H. Ely. From an order refusing to vacate an attachment against defendants' property on motion of subsequent judgment creditors, said creditors appeal.

Argued before PARKER, P. J., and LANDON, MERWIN, and PUTNAM, JJ.

Davenport & Hollister, for appellants.

Geo. E. & H. J. Greene, for respondent.

PARKER, P. J. The defendants are co-partners, doing business under the firm name of Wallace, Jones & Ely, and the plaintiff claims that as such they are indebted to it in the sum of $23,000 and upward. It also claims that the defendants have disposed of their property with the intent to defraud their creditors, and on that ground it has procured and caused to be levied an attachment against their property. The attachment recites that the defendants are co-partners, and that "they have assigned, disposed of, and secreted their and its property with intent to defraud its and their creditors," and directs the sheriff to attach and safely keep the property of the defendants. The action therefore is against the defendants jointly as a firm, and the attachment is against the firm's property. Other creditors of the defendants, having subsequently obtained judgment, levied an execution upon the property attached, moved at special term to vacate such attachment on the papers upon which it was granted, and from the order denying such motion this appeal is taken.

The transfer complained of is a general assignment made for the benefit of creditors. There is no distinct statement in any affidavit that such an assignment was ever made, and we are left in ignorance whether the one complained of assumed to convey firm property only or to include the individual property of the partners; but from the whole tenor of the affidavits it may, perhaps, be assumed that the firm had assigned its firm property to pay its firm debts.

Starting with that assumption, it becomes necessary, in order to sus-tain this attachment, for the plaintiff to show that the affidavit upon which it was granted ·contained a statement of facts from which· the judge who granted it, in the exercise of his judgment, could legally infer that the firm made such assignment with intent to defraud "its creditors." Bogart v. Dart, 25 Hun, 395; Central Nat. Bank of Troy v. Ft. Ann Woolen Co. (Sup.) 24 N. Y. Supp. 641; Id., 76 Hun, 610, 27 N. Y. Supp. 1114. The opinion of the affiant is not a fact upon which the judge's conclusion may be based. Ladenburg · v. Bank, 87 Hun, 269, 275, 33 N. Y. Supp. 821. Bank v. Barker (Sup.) 16 N. Y. Supp. 75. And if the facts are stated on information and belief the sources of the information and the grounds of the belief must be also stated, so that the judge may himself determine wheth-er they have a proper basis to rest upon. Buell v. Van Camp, 119 N. Y. 160–164, 23 N. E. 538; Hitner v. Boutilier, 67 Hun, 203, 22 N. Y. Supp. 64. And if the facts stated are as consistent with an honest intent as they are with a fraudulent one, fraud may not be inferred from them. Stow v. Stacy (Sup.) 9 N. Y. Supp. 1, 2; Morris v. Talcott, 96 N. Y. 107. After a careful study of the affidavit upon which this attachment was granted, I have been unable to dis-cover the statement of a single fact from which it can be legally inferred that the assignment complained of was made with a fraud-ulent intent. The affidavit of Getty tends to show that the partner Wallace had the general control of the co-partnership funds, and that the affiant verily believes he had appropriated $2,530.40 there-of to the payment of his individual debts; also that he transferred to his wife some of his individual property a short time before the assignment. · He also says that he believes from the affidavits of Jones, Easton, and Green that the assignment was made with the intent to defraud, but, as those affidavits were before the judge who granted the attachment, a statement of his opinion of them added nothing to their effect. The affidavit of Jones tends to show that for years Wallace had kept the books which showed the financial con-dition of the firm, and that, so far as he knows, the other partners did not know much about it. The affidavit of Easton shows that a short time before the assignment Wallace gave him the firm's note for a debt which he (Wallace) personally owed, and that Easton now holds it against the firm's assignee. Now, in neither of these affi-davits is there a fact stated that is not consistent with an honest purpose on the part of the firm in making their general assignment. Concede that Wallace transferred all his individual property to his· wife; concede that the· firm trusted him entirely with the manage-ment of its financial affairs, and that he, betraying such trust, used the firm's moneys to pay his individual debts,—do such facts im-peach the good faith of the firm, which, after it discovers them, and' finds that it has not funds with which to meet the drafts upon it, makes a general assignment for the benefit of all its creditors? There is not a statement in any of those affidavits that tends to show that the other co-partners in any way connived with the acts of Wallace; on the contrary, it would appear that they had been de-

frauded by him, and were therefore forced to make the assignment. Not a fact is suggested in any of them that the co-partners as a firm have secreted or reserved to themselves any of the firm assets. The only other affidavit is that of M. Green. He also swears that he believes from the affidavits of the others above named that the assignment was made with intent to defraud; but it appears that his belief in that respect is based upon very insufficient grounds.

It remains to examine the statement of fact contained in his affidavit. It states that on April 22d the "defendant purported to make an assignment," and that from the facts thereinbefore stated in his affidavit he believes it was with the intent to defraud their creditors. But the only facts before stated go to show that Wallace deceived him with reference to paying certain notes he held against the firm; nothing whatever implicating the co-partners in any fraudulent designs. He then goes on to state that the assignment did not intend to, and did not, convey all the firm's assets. The language of the assignment is the best evidence of what it conveyed, and his statement of what was intended, or what it conveyed, was but the statement of an opinion. The language of the instrument is the source from which the judge should draw his own conclusion. The affidavit then goes on to state that Wallace secreted a large amount of the firm assets before the assignment was made. Concede it; nevertheless, if they were firm assets, they would pass by the assignment to the assignee, and, unless the other partners were privy to such concealment, it would not affect the good faith of the assignment. It was Wallace's fraud on the firm, not the firm's fraud on its creditors. He next states that in the assignment is an attempt to prefer the estate of Lyman Wilder, deceased, of which the defendants Wallace and Jones were executors, to the amount of $12,300; that such attempt is fraudulent, and is an effort to pay with the firm's assets money that the firm never borrowed from the executors, and that Wallace had appropriated to his own use. Now, if there was a direct statement that the firm had in such assignment preferred such executors to the amount of $12,300, and that no such debt was owing them by the firm, we would have before us a fact from which a fraudulent intent might be inferred, and, if such was the fact, it was a very easy thing to have so stated it. But the affiant makes no such statement. He says an attempt to so prefer was made. What the assignment really provides on that subject is not disclosed. So he says the firm never borrowed the money from the executors. If it had borrowed from the deceased, or if it had guarantied its payment for one who did borrow from the executors, it might still owe the executors the full amount. Also he says Wallace had the money, and appropriated it to his own use. Possibly Wallace borrowed the money and the firm guarantied its payment, and took security from Wallace for so doing. Possibly Wallace stole the money from the firm after it borrowed from deceased. The facts connected with the transaction are not stated. As to the $4,500 note, a part of the $12,300, the affiant believes from an examination of Wallace's bank account that the firm had no part of

it. But would such account show whether the firm had it, and what does it show? The affiant's idea of what it shows, and his belief deduced therefrom, is not the fact upon which the judicial mind could base a conclusion. The trouble·is that no fact is stated in this connection from which it could be inferred that the firm had preferred to the executors a debt that it did not owe them. A valid indebtedness to that amount is entirely consistent with every statement made in that affidavit, and hence no intent to defraud can be based upon it. As to the remaining averments in this affidavit, it is not necessary to analyze each by itself. It is sufficient to say that none· of them are inconsistent with an honest purpose on the part of the firm in making the assignment in question. I conclude, therefore, that the prior fraudulent act of Wallace in diverting the funds of the firm to the payment of his individual debts, or his design to secrete its assets to his own use, unless it was known to and acquiesced in by the other partners, would not be ground for attachment against the· firm's property. I further conclude that there is no fact shown in the moving papers from which the judge might lawfully infer that the co-partners of Wallace were privy to his fraudulent designs, or that they made the assignment in question with the intent to defraud their creditors. In this matter the defendants are not the moving parties. If they were, the. special term, in the exercise of its discretion, might perhaps have required them to affirmatively show that the firm was not privy to Wallace's acts, and because they did not, on affidavits, fully explain the whole transaction, it might have allowed the attachment to stand. But subsequent lienors have not the means for such a full explanation, and the case becomes one of strict legal right between rival creditors, each claiming the better lien; and the sole question presented is whether the affidavits upon which the attachment was granted were sufficient to warrant it. Haebler v. Bernharth, 115 N. Y. 463, 22 N. E. 167. For those reasons the order of the special term should be reversed, with costs.

Order appealed from reversed, with costs and disbursements, and the motion to vacate the attachment granted, with costs. All concur.