VAN BRUNT, P. J., BARRETT and RUMSEY, JJ., concurred; PATTERSON, J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide event.

---

FREDERICK C. HOORMANN, Appellant, v. CLIMAX CYCLE COMPANY, Defendant.

GEORGE SCHUBACH, Junior Attaching Creditor, Respondent.

*Attachment — positive allegations in an affidavit are insufficient, unless the circumstances establish personal knowledge — Code of Civil Procedure, § 636.*

The mere averment of facts as upon personal knowledge, in an affidavit made to procure an attachment, is not sufficient unless circumstances are stated from which the inference can fairly be drawn that the affiant has personal knowledge of the facts which he avers.

An affidavit made by an assignee of a claim showed that he was, and for eighteen months before the affidavit was made had been, a resident of New York city; that the defendant was a foreign corporation, and that at Chicago previous to May 14, 1896, the plaintiff's assignor, a New York corporation, had sold goods

to the defendant which had not been paid for. No statement was made in the affidavit that the plaintiff had personal knowledge of the facts, and no circumstances were stated tending to show that he had any such personal knowledge. *Held*, that the affidavit was insufficient.

RUMSEY, J., dissented.

APPEAL by the plaintiff, Frederick C. Hoormann, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of August, 1896, granting a motion made by George Schubach, a junior attaching creditor, to vacate the plaintiff's attachment against the defendant, because of the insufficiency of the affidavit upon which the attachment was granted.

*Charles S. Sinsheimer*, for the appellant.

*Stillman F. Kneeland*, for the respondent.

WILLIAMS, J.:

The question involved in this appeal is whether a positive averment of facts, of which it is apparent the deponent, from his situation, could have had no general knowledge, is sufficient proof of such facts to authorize the granting of an attachment.

The affidavit was made July 15, 1896, by the plaintiff, who was the assignee of the claim in suit, and showed that for eight months last before the making of the affidavit he had been and still was a resident of New York city; that the defendant was a corporation in Illinois, and had its principal place of business in Chicago; that previous to May 14, 1896, at the city of Chicago, the New York Standard Watch Company, a New York corporation, through its agent, sold to the defendant at its request certain goods, wares and merchandise, and delivered the same on May 14, 1896, to defendant at Jersey City; that the goods were sold at the agreed and reasonable price of $214, which the defendant promised to pay; that no part of the purchase price had been paid although demanded, and that, previous to the commencement of the action, the claim for such purchase price had been duly assigned for value to the plaintiff. No statement was made in the affidavit that the plaintiff had personal knowledge of these facts, and no circumstances were stated tending to show that he had any such personal knowledge.

It was not stated that before the assignment of the claim the plaintiff had had any relations with either of the corporations, or knew any officer or agent thereof, not even the agent of the New York corporation who made the alleged sale.

The claim made by the appellant is that the implication arises from the unqualified allegation of the facts that the plaintiff had personal knowledge of such facts.

This claim cannot be supported upon a review of the authorities. It has frequently been held in this State, and especially by the Supreme Court in the first department, that knowledge will not be presumed from a mere positive averment of the facts, but it must also appear from the affidavit that such knowledge really existed, by a statement of circumstances from which the inference of knowledge can be fairly drawn.

In *Buhl* v. *Ball* (41 Hun, 61) it was held that an affidavit made by the plaintiff's agent which stated the facts in unqualified terms, was insufficient when nothing appeared which enabled the court to see how the deponent knew or could have known such facts, or showed the relations between him and the plaintiff to be such as to raise the presumption, from the nature of the agency, that he might have personal knowledge of the facts.

In *McVicker* v. *Campanini* (5 N. Y. Supp. 577) it was held that an affidavit made by a son of plaintiff, alleging facts of his own knowledge, but which did not show that the affiant, as agent or otherwise, personally conducted the business, and disclosed no facts or circumstances tending to show that he had any knowledge, was insufficient.

In *Nat. B'way Bank* v. *Barker* (16 N. Y. Supp. 75) it was held that an affidavit made by the plaintiff's cashier, stating unqualifiedly that notes were forgeries, was not sufficient in the absence of anything to show that the deponent could have had any personal knowledge on the subject.

In *Crowns* v. *Vail* (51 Hun, 204) it was held that the affidavit of one of the plaintiff's attorneys, stating facts unqualifiedly, but not stating how he could have knowledge of such facts, was insufficient; *"that the true rule was that the statements in affidavits will be presumed to have been made on personal knowledge * * * except where it appeared affirmatively, or by fair inference, that they*

*could not have been, and were not made on such knowledge.*" And where an affidavit, in respect to a transaction of his client, was made by one who was simply an attorney of record in an action, and, so far as appeared, was only the attorney for that action, the plain inference was that such attorney had *no* personal knowledge of the facts stated.

In *Kahle* v. *Muller* (57 Hun, 144) it was held that an affidavit made by an assignor of the claim sued on, which stated the indebtedness unqualifiedly, but contained no allegation that he had personal knowledge thereof, or facts showing how he could have had such knowledge, was insufficient.

In *Manufacturers' National Bank* v. *Hall* (60 Hun, 466; affd., 129 N. Y. 663) it was held that an affidavit made by plaintiff's attorney in New York, upon information furnished by its attorney in another State, it being apparent that neither attorney could have had any personal knowledge of the facts stated, was insufficient.

It is not disputed by appellant's counsel that the rule was well settled, as we have stated it, prior to the recent decision in this department, in the cases of *Ladenburg* v. *Com. Bank* (5 App. Div. 220) and *Hanson* v. *Marcus* (8 id. 318). There was no design on the part of this court by those decisions to change the rule, which had, for so long a time and by so many decisions in this department, become well settled. Those cases were decided upon their own peculiar facts, and are entirely in harmony with the rule theretofore existing. The *Ladenburg* case was brought upon bills of exchange made by the defendant in Newfoundland, and subsequently purchased by the plaintiff, and protested in London for non-acceptance while the plaintiff who made the affidavit for the attachment was in New York city. It was claimed that it appeared from the facts stated that the deponent could not have had personal knowledge of the making and protest of the bills, to which he testified unqualifiedly. It was held by the court that considering the date of the protest, December 10, 1894, and the time when the affidavit was made, May 20, 1895, there was no reason why the affiant might not, at the time he made the affidavit, have had in his possession the bills of exchange, and the notarial certificate of protest, and the court would so assume, and that if he had them he might properly depose upon knowledge.

In the opinion of Mr. Justice BARRETT the rule laid down by

Mr. Justice Van Brunt in *Crowns* v. *Vail* (*supra*) was quoted, that "statements in affidavits will be presumed to have been made on personal knowledge, unless   *   *   *   it appears affirmatively, or by fair inference, that they could not have been, and were not on such knowledge." The rule was thus stated in different language from that found in any of the other cases, and seemed to imply that the presumption was in favor of the existence of personal knowledge, unless the contrary was shown; but that there was no intention to change the rule in that case is obvious from the language used by Mr. Justice Van Brunt, immediately following the statement of the rule, viz.: "It seems to us that where an affidavit in respect to a transaction of his client is made by one who is simply an attorney of record in an action and who, as far as the record shows, is only his attorney for this action, the plain inference is that such attorney has not personal knowledge of the facts as to which he affirms. It is not even asserted in the affidavit that the affiant is the attorney in fact of the plaintiff, or that he had been the attorney of record of the plaintiff in any previous action, and all that can be inferred from the affidavit is that the retainer to bring this action was the first relation that had ever existed between the plaintiff and the affiant. Such an affidavit seems to be entirely insufficient, as the allegations must be presumed *not* to be within the knowledge of the attorney."

Whatever the language used by the learned justice in formulating the rule may have seemed to imply, therefore, the rule actually applied in the case was in accord with all the former decisions, that, in the absence of evidence from which the inference could be drawn that personal knowledge existed, the presumption must be indulged that the affiant had no such knowledge, or, in the language of the latter part of the rule as stated, the fair inference is that there could not have been, and was not, such personal knowledge. Clearly the same rule was believed to exist and was applied in that case which was laid down in all the other cases.

In the *Ladenburg* case this same rule was recognized. In disposing of the facts in that case, Mr. Justice Barrett said: "But the defendant is in error in its belief that the affiant was shown not to have in fact, sufficient knowledge. Knowledge such as the law requires in affidavits of the present description is not necessarily per-

sonal observation of the affiant plaintiff. That the bills of exchange were drawn in Newfoundland and protested in London while the affiant was in New York — this is the sum and substance of the defendant's attack upon the affiant's statements. The affidavit was made May 20, 1895, and the last of the bills was protested December 10, 1894. It was, therefore, quite possible that the bills, with the documentary evidence of protest, were in the possession of the affiant plaintiff when he made his affidavit, and in view of his assertion of knowledge, we must *assume* such to be the case, in the absence of evidence to the contrary. If he had these bills and notarial certificates of protest in his possession, his assertion of knowledge was *not* unfounded. There was knowledge within the sense of the statute."

It thus appears that the theory upon which this decision was made was that, from the facts stated in the affidavits, the court would assume and the natural inference was that the affiant had this documentary evidence. This inference was not to be drawn merely from the averment of a personal knowledge of affiant, but from that together with other circumstances appearing in the affidavit. That case we repeat was decided upon its own peculiar facts. The rule should not be extended.

In *Hanson* v. *Marcus* (*supra*) the *Ladenburg* case was cited and relied upon. But there, again, the decision rested upon facts which brought it within the rule established by all the cases to which we have referred. The affidavit showed that the affiant was the duly authorized agent, manager and attorney in fact of the plaintiff, and that all the business transacted between the plaintiff and the defendants, about which the affiant testified, was had with an agent, though it did not state that the affiant was such agent. These statements were such as to fairly warrant an inference that the affiant had general knowledge of the facts which he averred of his own knowledge. There was, in these cases, no design to change the rule theretofore established in this department. The well-settled rule should not be changed. To hold the affidavit sufficient in this case would be going far beyond the *Ladenburg* and *Hanson* cases, and would be a dangerous precedent for the future. We think the better and safer rule is the one heretofore uniformly adhered to in this department, viz., that the mere averment of facts as upon personal knowledge is not sufficient unless circumstances are

stated from which the inference can fairly be drawn that the affiant has personal knowledge of the facts which he avers.

Our conclusion, therefore, is that the order appealed from should be affirmed, with costs.

Van Brunt, P. J., Barrett and Patterson, JJ., concurred; Rumsey, J., dissented.

Barrett, J. (concurring):

The requirements of section 636 of the Code of Civil Procedure are neither technical nor formal. The right to attach on mesne process is an extraordinary power given by statute against common right, and no title can be acquired by its exercise except upon strict compliance with the terms of the statute. (Ency. of Pl. & Pr. Vol. 3, p. 3, and numerous cases there cited.) By strict compliance is undoubtedly meant substantial compliance. But mere formal compliance will not answer. One of these substantial requirements is that the plaintiff must show by affidavit, to the satisfaction of the judge granting the warrant, the existence of a cause of action against the defendant. He must show this by affidavit, that is, by something in the nature of proof — not by mere averment. It is true that, in some cases, a verified allegation of the cause of action may of itself furnish proof, sufficient at least to confer jurisdiction. The allegation must then, however, be verified by the plaintiff, or his agent or attorney. It cannot be verified by a total stranger to the transaction, or by a person who is in a legal sense a stranger to the plaintiff. Even where the complaint which contains the allegation is verified by the plaintiff's agent or attorney, the latter must speak of his own knowledge, or set forth " in the affidavit the grounds of his belief as to all matters not stated upon his knowledge, and the reason why it is not made by the party." (Code Civ. Proc. § 526.)

Now, what have we here? Averment, and averment alone, without proof or statement tending to constitute proof. The plaintiff shows nothing whatever by affidavit. He simply deposes to his naked assertion of the existence of certain facts. True, he is the plaintiff. But, so far as the attempt to show a cause of action by affidavit is concerned, he is a total stranger to the transaction between his assignor and the defendant. His affidavit is quite sufficient as to the assignment to himself. In all other respects it is

the mere sworn assertion of a stranger, unsupported by a particle of proof. When this distinction between averment and proof is kept in mind, the *Ladenburg Case* (5 App. Div. 219) and the case of *Hanson* v. *Marcus* (8 id. 318) will be found to be entirely in harmony with the conclusions here arrived at. The affidavit in the *Ladenburg* case was made by a member of the plaintiff's firm about a matter of firm business and was, therefore, presumptively made upon knowledge. *His verified averment* of the cause of action there sufficed. That was sufficient proof by affidavit of the existence of the cause of action to confer jurisdiction. Why? Because the man was speaking about his own business, that is, about matters which ordinarily import knowledge. So in *Hanson* v. *Marcus* the affiant " was the duly authorized agent, manager and attorney in fact of the plaintiff." There, too, the agent's verified averment of the cause of action imported knowledge. The decision rested upon the presumption that a person who was the plaintiff's agent, manager and attorney in fact *was " the person who knew* as to the condition of her affairs with the defendant." This rule applies not only to an individual plaintiff and his general agent or attorney in fact, but to the officers or other agents of a corporation; indeed, to any person who is shown by the affidavit to have been connected with the transaction which constitutes the cause of action on the plaintiff's behalf.

Where, however, the affiant is neither the plaintiff nor his agent, manager or attorney in fact — where he is not apparently connected with the plaintiff or the transaction in any way — his affidavit as to such transaction amounts to nothing more than a verified assertion; that is, an assertion which, for some undisclosed reason, or upon some undisclosed information, he believes to be true. The fair inference from the bald statement of A., standing alone and without any direct affirmation of personal knowledge, that B. has loaned money to C. is, that A. speaks only from information which he credits. The courts have invariably held that such bald statements, although in form made positively, amounted to mere expressions of belief or opinion. Thus, in *Tim* v. *Smith* (93 N. Y. 87) the moving creditor presented affidavits of certain attorneys stating unreservedly that, by virtue of a particular attachment, the sheriff attached property of the defendant. This was held to furnish no

evidence of the fact. "Such an affiant," said Chief Judge Ruger, "does not necessarily have knowledge of, and cannot be presumed to know, the several facts attempted to be established by his affidavit, in this case." So in *Thomas* v. *Dickinson* (33 N. Y. St. Repr. 786) the affiant stated that, shortly after the sale of certain barrels of whiskey by the plaintiffs to the defendants, they were pledged with a warehouse keeper and an advance obtained thereon. The court held that, as the statements related to transactions *between other persons, at which the affiant could not be presumed to have been present*, they furnished no reliable reason for believing that they had been correctly stated. Mr. Justice Daniels in that case said that the fact that a witness states transactions positively as being within his knowledge, when it can be seen that he does not possess that knowledge, constitutes a circumstance which requires the statements to be rejected. In *Murphy* v. *Jack* (142 N. Y. 215) the question of knowledge was an underlying one. The affiant attempted to comply with the rule and to give his information, he not claiming to have knowledge of the main facts. In doing so, however, he stated positively that he had received this information from the plaintiff through the telephone. It was held that this unqualified statement was insufficient to confer jurisdiction, and that the affiant was bound to show how he knew what he thus asserted as upon knowledge.

The true test of the sufficiency of an affidavit is the possibility of assigning perjury upon it if false. (*The People ex rel. Cook* v. *Becker*, 20 N. Y. 354.) This test is essentially applicable to affidavits used to secure attachments. It was well said by Lyon, J., in *Miller* v. *Munson* (17 Am. Rep. 461), that "the proceeding by attachment is very summary and violent. The purpose of the law which requires that a certain affidavit be made before the writ can issue is to protect the alleged debtor from so severe a process, unless the creditor or some person in his behalf, under the responsibilities of an oath, shall assert the existence of certain facts which the law adjudges good grounds for issuing the writ. This requirement of the law would afford the debtor no protection whatever unless the affiant is liable to be punished criminally if he willfully swears falsely in such affidavit. Hence, although the affidavit be in the very words of the statute, it is not sufficient unless perjury can be assigned upon it."

How, it may be asked, could perjury be successfully assigned upon the affidavit in question? Suppose the plaintiff's assignor had not sold the goods to the defendant, but this affiant had relied, in making his sworn assertion, upon what he reasonably deemed to be credible information, could he be justly charged with having made an unqualified statement importing knowledge of that which he did not know to be true? Clearly not. Even if the fact were true as alleged, it would be perjury to make an unqualified statement of such fact which the affiant did not know to be true. The common-law rule upon the latter head which is now embodied in the Penal Code (§ 101) is quaintly put by Sir William Russell, in his work on Crime (Vol. 1 [6th ed.], p. 294), as follows: "With respect to the falsity of the oath it should be observed that it has been considered not to be material whether the fact which is sworn be in itself true or false; for, howsoever the thing sworn may happen to prove agreeable to the truth, yet, if it were not known to be so by him who swears to it, his offense is altogether as great as if it had been false, inasmuch as he willfully swears that he knows a thing to be true which at the same time he knows nothing of, and *impudently endeavors to induce those before whom he swears to proceed upon the credit of a deposition which any stranger might make as well as he.*"

The fair inference from the present affidavit absolves the affiant from this " impudent endeavor." He has attempted to impose upon no one. He neither says nor suggests that he was in Chicago on the 14th of May, 1896, or that he was present when the assignor's agent and the defendants then and there made their bargain, or that he subsequently saw the goods delivered in Jersey City. What he says imports information as to the averment of a sale and delivery of the goods, not personal knowledge. Even if he were entirely ignorant as to the actual fact of such sale and delivery, he is at least innocent of any possible charge of having willfully sworn that he knew the fact as thus asserted to be true.

The question really does not deserve such elaborate consideration. It amounts to this, that we are asked to hold that a court should act judicially in a serious matter upon less evidence than would be required by any sensible and prudent business man in the ordinary affairs of life. If a stranger should enter a business man's office

and tell him that his interests were likely to be affected by a transaction which the stranger knew had occurred between A. and B., the business man would surely say : Who are you and how do you know this ? Shall a court of justice authorize a citizen's property to be seized before judgment, under the circumstances here presented, without saying as much ? The question answers itself.

The order appealed from was right, and it should be affirmed, with costs.

Van Brunt, P. J., Patterson and Williams, JJ., concurred; Rumsey, J., dissented.

Rumsey, J. (dissenting) :

The warrant of attachment in this case was granted upon the affidavit of the plaintiff, and the motion to vacate the attachment is made by a junior creditor, without any papers except a stipulation that he has a lien by attachment upon the same property as that upon which the attachment is granted in this action. The sole ground upon which the warrant was vacated was, that the affidavit upon which it was granted was not sufficient.

In form the affidavit is all that could be desired. It states the facts which are required by the statute to entitle the plaintiff to the relief which he asks. It says that the defendant is a foreign corporation, having its office and principal place of business in Chicago in the State of Illinois; that before the 14th of May, 1896, at Chicago, the New York Standard Watch Company, through its agent, sold to the defendant certain goods which were, on the 14th day of May, 1896, delivered at Jersey City to the defendant; that the goods were sold at the agreed and reasonable price of $214, which the defendant promised to pay, and that no part thereof has been paid, although demanded. The affidavit further states that the cause of action was assigned to the plaintiff.

The criticism upon this affidavit, and the ground upon which it has been held to be defective, is that, although the facts contained in it are stated positively by the plaintiff, yet his grounds of knowledge are not stated, and it does not appear from what he says that he did have personal knowledge of the facts out of which grew the cause of action which lies at the foundation of his right to an attachment. It is to be noticed that there is nothing to contradict or disprove the

allegations contained in the affidavit, and the question raised, therefore, is simply a technical one, whether it will be assumed, where a fact is stated as of the personal knowledge of the affiant, that such fact does not exist because the affiant has not, in addition to stating the facts, stated other facts from which it could be made to appear that he must have known that whereof he spoke. The rule of law has always been, with regard to the testimony of witnesses, that, when one stated a fact as of his personal knowledge, it would be presumed that he had such knowledge, unless it appeared presumptively or by fair inference that he could not have had it, and that the allegations were not made upon it. Such was the rule laid down in *Crowns* v. *Vail* (51 Hun, 204), in the case of an attachment. This has always been the rule applied in the interpretation of testimony. It has been applied in this court in the case of *Ladenburg* v. *Commercial Bank* (5 App. Div. 219), and still more recently in *Hanson* v. *Marcus* (8 id. 318).

The case of *Ladenburg* v. *Commercial Bank (supra)* is precisely in point on this question. The action was brought upon certain drafts which had been made by the defendant, a foreign corporation, payable in London, and which had been presented at the bank in London where they were payable for acceptance, had not been accepted, and were protested for non-acceptance. It was necessary in that case for the plaintiff to show as a part of his cause of action that the drafts had been presented for acceptance, that acceptance had been refused, and that they had thereupon been protested. It was conceded that those things, if they occurred, must have occurred in the city of London ; and it also was conceded that the plaintiff, upon whose affidavit alone the attachment was granted, had not been in the city of London, and, therefore, could not have been present when the facts which he testified to occurred. Upon that state of facts the court below refused to vacate the attachment. Upon an appeal taken to this court it was strenuously insisted that the plaintiff could not have had knowledge of the facts which were stated in his affidavit, and that, therefore, it was error to have permitted the attachment to stand. The court said : " Knowledge such as the law requires in affidavits of the present description is not necessarily personal observation of the affiant plaintiff. That the bills of exchange were drawn in Newfoundland and protested in London while the

affiant was in New York — this is the sum and substance of the defendant's attack upon the affiant's statements. The affidavit was made May 20, 1895, and the last of the bills was protested December 10, 1894. It was, therefore, quite possible that the bills, with the documentary evidence of protest, were in the possession of the affiant plaintiff when he made his affidavit, and in view of his assertion of knowledge we must assume such to be the case in the absence of evidence to the contrary. If he had these bills and notarial certificates of protest in his possession his assertion of knowledge was not unfounded. That was knowledge within the sense of the statute."

The necessary effect of that decision is that an affidavit made as of the personal knowledge of the affiant is sufficient, unless it appears that he could not have had knowledge of the facts whereof he speaks; and that if the affiant could have had knowledge, derived in the ordinary course of business, of the truth of the thing which he testified to, it will be sufficient to sustain the attachment. There was no proof in that case that the plaintiff had the bills with notarial certificates of protest, nor was there anything to show that he knew anything more on the subject than that he had received telegraphic advices from London that acceptance of the bills had been refused and that they had been protested. But yet the court, for the purpose of sustaining the attachment, the plaintiff having testified positively to the facts, indulged in the presumption that he had the ordinary means of knowledge which would enable him to testify, not to what he saw done, but to the inferences which he might have drawn from the knowledge which he acquired, because he had in his hands evidence that the bills had been protested. That case was decided by a unanimous court after much consideration. It is not an extreme application of the rule which was regarded as well settled, but it is the ordinary common-sense construction to be put upon an affidavit as to business matters when the facts alleged in them are not disputed. The case was followed by this court in *Hanson* v. *Marcus* (8 App. Div. 318), where the affidavit was made by one who was the duly authorized agent of the plaintiff, and who stated as of his own knowledge the facts, constituting the cause of action, which appeared to have grown out of transactions between the defendants and the agent of the plaintiff. It did not appear, however, that

the affiant was the agent.   But the rule laid down in the *Ladenburg* case was applied, that statements in affidavits will be presumed to have been made upon personal knowledge, except when stated to have been made upon information and belief, or where it appears affirmatively or by fair inference upon the face of the affidavit itself, that the statements could not have been made, and were not made, upon personal knowledge.

Now, what appears in this case?   The testimony of the plaintiff is positive that a transaction took place in Chicago shortly before the 14th of May, 1896.   He does not say whether or not he himself was in Chicago at the time.   For aught that appears in this case, not only may he have been there, but he may have been the person who had the transaction which resulted in the sale of these goods to the defendant.   It is not a violent presumption that men from New York go to Chicago and do business there for corporations doing business in this State, and it is a matter of every-day knowledge that men in New York do business each day by word of mouth with people in Chicago through the telephone, one man being in Chicago and the other in New York.   So that when a man living in New York states as of his personal knowledge that something occurred in Chicago a few months before, it may fairly be inferred that he states what he knew, and, in the absence of any testimony contradicting it, his affidavit ought to be sufficient to warrant the court in taking action upon it.   This is not an extension of the rule laid down in *Ladenburg* v. *Commercial Bank,* but it is simply a fair application of the ordinary common-sense rule, which is to be applied to business transactions.   It is to be remembered that the necessary result of that case is that personal knowledge is not required.   Indeed, the opinion says so.   All that is required is that the affiant should have such information as would enable him to establish the fact when called upon to prove it; and if he has that knowledge he need not state in his affidavit that he has any such knowledge — he did not state it in the *Ladenburg* case — but it will be presumed that he did have it, and that he will be able to produce it upon the trial.

When this affidavit was presented to the court, jurisdiction to grant the warrant was obtained (*Ladenburg* v. *Com. Bank, supra*), and it then became necessary, before the attachment could be vacated, to disprove the facts thus positively testified to.   No such evi-

dence was given, and for that reason it was error on the part of the court below to vacate the warrant. This action cannot be sustained unless we are prepared to overthrow the rule laid down in the cases of *Ladenburg* v. *Commercial Bank* and *Hanson* v. *Marcus* (*supra*).

The order of the Special Term should be reversed, with ten dollars costs and disbursements.

Order affirmed, with costs.