pay to the other party the sum of $3,000 as liquidated damages for the breach. The court found that the defendant failed to fulfill the contract according to its terms, and that prior to the commencement of this action he notified plaintiffs that he did not intend to perform the contract upon his part. The evidence is sufficient to support these findings. It appeared, without dispute, that, prior to the date when the deed of the property was to be executed and delivered as the contract required, the defendant requested that its execution be postponed, and that in pursuance of such request it was not executed. The defendant now insists that there can be no recovery under the contract, because no deed was made and tendered before the commencement of this action, and plaintiffs did not show ability and willingness to perform. The evidence tends to show that, before the parties were to meet and execute the deed, the defendant requested that it be not executed, as he might sell the farm in the meantime, and would wish the deed made directly to the purchaser. Subsequently he refused to fulfill the contract, and requested its cancellation. This act dispensed with necessity for executing and tendering the deed. Baumann v. Pinckney, 118 N. Y. 604, 23 N. E. 916. The contract recited the existence of the property, and referred in terms to the deed that was to be executed, and the description which the same was to contain. The proof was that this deed was not made out and tendered for the reason that the defendant failed to give the name or fulfill the contract; that the parties were always ready to make the deed. The defense proceeded entirely upon the theory that there had been a rescission and abandonment of the contract, and no claim was made that the defendant could not obtain what he contracted for, if he was willing upon his part to fulfill, and had not repudiated, his engagement. This testimony was therefore sufficient to uphold the finding that the plaintiffs were ready and willing to fulfill their contract and execute a good and sufficient deed. Nothing further was necessary to enable the plaintiffs to maintain this action. Baumann v. Pinckney, supra; Skinner v. Tinker, 34 Barb. 333; Woolner v. Hill, 93 N. Y. 576. No point was made by the defendant that the plaintiffs did not have title to the property, or that the deed which they were willing to execute would not convey good title to the land. The doctrine of Bigler v. Morgan, 77 N. Y. 312, and kindred cases, is therefore without application.

The judgment should be affirmed, with costs. All concur.

---

(17 App. Div. 228.)

SHULER et al. v. BIRDSALL, WAITE & PERRY MANUF'G CO.

(Supreme Court, Appellate Division, Third Department. May 25, 1897.)

1. ATTACHMENT—INFERENCE OF FRAUDULENT INTENT.

An inference that a corporation is about to assign, dispose of, and secrete its property cannot be drawn from the mere fact that the corporation, being insolvent, has instituted a proceeding to have a receiver appointed.

2. SAME—ACTS CONSISTENT WITH HONESTY.

The shipment by a manufacturer of goods from his factory, though in unusual quantities, is not alone evidence that he has assigned, disposed of, and secreted property with intent to defraud creditors, since it is in the di-

rect line of a manufacturing business, and is therefore as consistent with
an honest as with a dishonest intent.

3. SAME—AFFIDAVIT—PERSONAL KNOWLEDGE OF AFFIANT.
    The requirement that an affidavit must state circumstances from which
    it can be fairly inferred that affiant had personal knowledge, as averred
    in the affidavit, of matters therein recited, is not satisfied by an affidavit
    showing that affiant resided in a locality different from that in which such
    matters occurred.

4. SAME—ACTS OF CORPORATE OFFICERS.
    A corporation is not chargeable with an intent to defraud its creditors
    because its president appropriated its funds to his own use.

Appeal from order of Broome county judge.

Action by Davis W. Shuler and another against the Birdsall, Waite
& Perry Manufacturing Company on two promissory notes. An at-
tachment was issued against the property of defendant, and Elmore
G. Page, as temporary receiver, moved on the original papers to va-
cate the attachment, on the ground that the affidavit of William H.
Son, on which the attachment was granted, was insufficient. The
motion was denied, and said Elmore G. Page, as temporary receiver,
appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

Elmore G. Page, for appellant.
T. B. & L. M. Merchant, for respondent.

MERWIN, J. The question on this appeal is whether the affi-
davit upon which the attachment is based is sufficient to authorize
it. The affidavit and warrant are dated December 11, 1896. It ap-
pears that the plaintiffs are co-partners, doing business at Amster-
dam, N. Y., and the defendant is a domestic corporation, having its
place of business in the village of Whitney Point, N. Y. The plain-
tiffs' cause of action is based upon two promissory notes, executed
and delivered by the defendant at Cortland, N. Y., payable to the or-
der of plaintiffs, one month after date,—one for $95.50, dated No-
vember 3, 1896, and the other for $300.32, dated November 6, 1896.
The execution and delivery of the notes, their nonpayment and pro-
test, and the amount due thereon over and above all counterclaims,
are set out in the affidavit. The ground of the attachment, as stated
in the warrant, is that the defendant "had assigned, disposed of, and
secreted, and was about to assign, dispose of, and secrete, its prop-
erty, with intent to defraud its creditors."

The main, if not only, fact stated upon which to base the allega-
tion that defendant is about to assign, dispose of, and secrete its
property, is that the defendant, being insolvent, is trying to have a
receiver appointed, and a suit is pending for that purpose. This fact
does not sustain the allegation of an intent to defraud creditors, but
rather the contrary. By such an appointment all the creditors are
afforded equal protection. In support of the allegation that the de-
fendant had assigned, disposed of, and secreted its property with in-
tent to defraud its creditors, it is positively stated in the affidavit
that "about three weeks ago the defendant knew that it was insolv-
ent, and unable to pay its debts, and the directors and officers had a

consultation, and since that time they have been shipping away unusually large quantities of manufactured material, and that the president of defendant had been drawing out large sums of money for his personal use." It is also stated by the affiant, from information derived from one Davy, foreman of the trimming shop, and Mr. Perry, one of the officers of the defendant,—but what one is not stated,—that within the past few days manufactured material in unusual quantities had been shipped to one Whitney, of Cortland, of the value of several thousand dollars and about 10 car loads. It is also stated by the affiant that, "with conversations that he had with John Dickinson, and from George Seymour and other parties around the village of Whitney Point," he ascertained that defendant had been shipping most all of their manufactured material away within the last three weeks, and had depleted their stock so that there was very little desirable left; that he then went into the factory, and looked through it, and ascertained that there was not more than $2,000 in value of stock, and all they had left was this stock, plant, and a few book accounts,—all not to exceed in value $4,000 or $5,000. The affiant had previously stated that he was informed that the president had taken away the books of the defendant. The affiant also positively stated that the defendant was owing about $20,000.

The question arises as to how much weight should be given to the positive statements of the affiant. It does not appear where he resides. He states, at the commencement of his affidavit, that he is the general manager and agent for the plaintiffs, is fully acquainted with all the plaintiffs' business, and has full knowledge of all the facts and transactions thereinafter set forth. If, as may be inferred, he resides at Amsterdam, where the business of the plaintiffs is located, his personal knowledge of what occurred at Whitney Point, in Broome county, prior to his arrival there, as he says, on December 9, 1896, is not apparent. In Hoormann v. Cycle Co., 9 App. Div. 579, 41 N. Y. Supp. 710, the rule is laid down that the mere averment of facts as upon personal knowledge, in an affidavit made to procure an attachment, is not sufficient, unless circumstances are stated from which the inference can be fairly drawn that the affiant has personal knowledge of the facts which he avers. This is a reasonable rule, and, applying it here, the positive statements of the affiant that the directors of the defendant after a consultation shipped away unusually large quantities of manufactured material, that the president of defendant had been drawing out large sums of money for his personal use, that the defendant was owing about $20,000, and there were but few book accounts, are entitled to but little weight.

It may be assumed that within a short time manufactured material in unusual quantities had been shipped to Whitney, of Cortland. If so, it remained at a known place within the jurisdiction of the court, and where the notes to plaintiff were given, and where one of them was payable. It does not appear what the goods were, or what kind of goods the defendant manufactured, or where they were usually sold or marketed, or what the position of Whitney was with reference to defendant. Shipment from the factory would ordinarily be in the direct line of a manufacturing business, and the

728

45 NEW YORK SUPPLEMENT                      (Sup. Ct.
and 79 New York State Reporter.

fact alone that the amounts were unusual would not be sufficient to sustain the allegation of fraud. From the affidavit, taken altogether, we cannot assume that shipments were made to any other place than to Cortland, or that the shipments were made for any other purpose than for sale or market. Assuming that the president of defendant drew out large sums of money for his personal use, it would not follow, from that fact alone, that the corporation would be chargeable with fraud. An act in fraud of the corporation would hardly show fraud on the part of the corporation. See Bank v. Wallace, 4 App. Div. 382, 38 N. Y. Supp. 851.

The shipments of goods and the acts of the president are the main circumstances bearing on the alleged fraudulent transfer or secretion of defendant's property. Significance is claimed for the information, imparted to the affiant by one Knickerbocker, engineer, that the president of the company had gone away with a satchel containing the books of the defendant. If, as the affiant was also informed, the president was engaged in consultation with his attorneys with a view of having a receiver appointed, and a suit was pending for a receiver, it is not strange that the president should have the books of the company, and a dishonest intent would not be inferable. The engineer also told the affiant that he was instructed to lock the plant up and keep the keys until called for by the receiver.

To authorize an attachment upon the ground alleged there must be actual or intended fraud. Casola v. Vasquez, 147 N. Y. 258, 41 N. E. 517. If the facts stated are as consistent with an honest intent as they are with a fraudulent one, fraud may not be inferred from them. Bank v. Wallace, supra. The affidavit is, we think, not sufficient to authorize the conclusion that the corporation had assigned or disposed of or secreted any of its property, or was about to do so, with intent to defraud its creditors. It follows that the order appealed from should be reversed.

Order reversed, with $10 costs and disbursements, and motion to vacate attachment granted, with $10 costs. All concur.